**DESOTO WILDWOOD DEVELOPMENT, INC., Appellant and Appellee,**

v.

**The CITY OF LEWISVILLE, TEXAS, Appellee and Appellant.**

**No. 2–04–149–CV.**

Court of Appeals of Texas, Fort Worth.

Jan. 19, 2006.

---

**23.** *Adkins,* 717 S.W.2d at 364.

**24.** *See* Tex.R.App. P. 47.1.

Rogers Law Firm, PLLC and John M. Rogers, Weatherford, for Appellant (Cross Appellee).

Wm. Andrew Messer, Frisco, for Appellee (Cross Appellant).

PANEL B: HOLMAN, GARDNER, and MCCOY, JJ.

## OPINION ON REHEARING

BOB McCOY, Justice.

After reviewing Appellant's motion for rehearing, we deny the motion. We withdraw our opinion and judgment of October 27, 2005 and substitute the following.

### I. INTRODUCTION

In four issues, DeSoto Wildwood Development, Inc. ("DeSoto") appeals the dismissal of its lawsuit against the City of Lewisville, Texas ("the City") through the granting of the City's amended plea to the jurisdiction. We affirm in part and reverse and remand in part.

### II. FACTUAL AND PROCEDURAL BACKGROUND

In October of 1993, DeSoto owned, and sought to develop, a tract of unimproved real property of approximately thirty-five acres in size, located within the territorial jurisdiction of the City of Lewisville, which is a home-rule municipality. The development, to be called Creek View Village Addition, phases II, III, IV, abutted Garden Ridge Boulevard. Upon application to the City for approval of the development, DeSoto was informed that an expansion of the existing Garden Ridge Boulevard would be necessitated, and as a condition for approval, the City imposed fees on DeSoto to pay for the costs of expanding and constructing the roadway facilities. The subdivision regulations for the City required DeSoto to dedicate the expanding roadway area to the City and pay for all public improvements, including pavement, drainage, sidewalks, and traffic control equipment for an expanded Garden Ridge Boulevard adjacent to the new addition.[1] The total of the fees paid by DeSoto to the City amounted to $132,988, which were escrowed by DeSoto for the construction of the roadway and improvements. The agreement between the City and DeSoto, besides providing for the escrow of the fees, included language that "[t]he exact time for construction of said Improvements shall be in [the] sole discretion of [the] 'City.'" The agreement also allowed DeSoto to construct the improvements in lieu of the City, at DeSoto's option, and after the construction and approval of which, the escrowed monies would be returned by the City to DeSoto. As Creek View Village Addition developed, lots were sold to resident purchasers but, according to DeSoto, less than 100% of the land in the subdivision was sold or transferred to these third parties because the rights-of-way for streets, including the Garden Ridge Boulevard easement, was dedicated but title was not transferred.

In April and October of 2001, DeSoto made written demands on the City for refund of the escrow fees because the City had failed, in eight years, to construct the capital improvements and roadway facilities contemplated by their agreement.

---

1. Specifically, section 4.2.2 of the Lewisville General Development Ordinance holds a developer responsible for one-half of the construction of a street abutting the development.

These requests were rebuffed by the City through its city attorney.[2] The City was also asked by DeSoto to advise DeSoto if any specific form requests or further information was necessary to obtain the requested funds. Neither forms nor requests for information nor refunds were forthcoming, and litigation ensued.

In its second amended petition, DeSoto alleged causes of action against the City for (1) the refund of the "impact fees" pursuant to chapter 395 of the local government code, (2) breach of the DeSoto–Lewisville agreement regarding the payment of the fees, (3) state and federal takings claims, and (4) the return of the fees because they were excessive. On April 1, 2004, a hearing was held on the City's amended plea to the jurisdiction, which the trial court granted. Findings of fact and conclusions of law were also made. This appeal followed as to all causes of action except the federal takings claim.

### III. PLEA TO THE JURISDICTION

A plea to the jurisdiction challenges the trial court's authority to determine the subject matter of the action without defeating the merits of the case. *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex.1999); *Archibeque v. North Texas State Hospital–Wichita*, 115 S.W.3d 154, 157 (Tex.App.-Fort Worth 2003, no pet.). Whether the trial court had subject matter jurisdiction is a question of law that we review *de novo*. *Univ. of North Texas v. Harvey*, 124 S.W.3d 216, 220 (Tex.App.-Fort Worth 2003, no pet.). The plaintiff has the burden to plead facts that affirmatively establish the trial court's subject matter jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex.1993).

Although the claims may form the context in which a plea to the jurisdiction is raised, the plea should be decided without delving into the merits of the case. *Bland ISD v. Blue*, 34 S.W.3d 547, 554 (Tex.2000). Accordingly, in determining whether jurisdiction exists, we look to the allegations in the pleadings, accept them as true, and construe them in favor of the pleader. *Tex. Ass'n of Bus.*, 852 S.W.2d at 446. We may also consider evidence presented to the trial court relevant to jurisdiction when it is necessary to resolve the jurisdictional dispute. *Blue*, 34 S.W.3d at 555. If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiff an opportunity to amend. *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex.2002).

The City included in its plea to the jurisdiction DeSoto's responses to disclosure and admissions and part of the City of Lewisville General Development Ordinance. DeSoto included an affidavit, multiple agreements, and certain correspondence in support of its response to the City's plea to the jurisdiction. Applying a *de novo* standard of review, we will review DeSoto's pleadings and, when necessary, the relevant jurisdictional evidence to resolve the jurisdictional dispute. *See id.*

### IV. CHAPTER 395 OF THE LOCAL GOVERNMENT CODE

In its first issue, DeSoto argues that the trial court erred by determining that it did not have jurisdiction to hear DeSoto's claims for a refund of "impact fees" under chapter 395 of the local government code. DeSoto asserts that it is entitled to a refund of the paid, but unused impact fees pursuant to section 395.025 of the local government code. The City responds that

---

2. "In my opinion, the agreements are clear that the time of construction by the City is in

its sole discretion.... I do not believe that the developer is due a refund at this time."

the trial court lacked jurisdiction because DeSoto did not have standing to demand return or refund of the fees because they were not statutory impact fees. Thus, the first question to be answered in this appeal is whether the fees paid by DeSoto were statutory "impact fees."

## A. Impact Fees

 The trial court, in its finding of fact number 13, concluded that the escrow funds in question did not constitute an "impact fee" as defined in the local government code. We hold that this is actually a conclusion of law, which is reviewed *de novo* as a legal question. *Smith v. Smith*, 22 S.W.3d 140, 149 (Tex.App.-Houston [14th Dist.] 2000, no pet.).

Chapter 395 of the local government code, titled "Financing Capital Improvements Required By New Development In Municipalities, Counties, And Certain Other Local Governments," provides the methods and means by which an impact fee is to be lawfully imposed, if at all. An impact fee is defined as "a charge or assessment imposed by a political subdivision against new development in order to generate revenue for funding or recouping the costs of capital improvements or facility expansions necessitated by and attributable to the new development." TEX. LOC. GOV'T CODE ANN. § 395.001(4) (Vernon Supp.2004–05). The definition continues, "[t]he term includes amortized charges, lump-sum charges, capital recovery fees, contributions in aid of construction, and any other fee that functions as described

by this definition."[3] *Id.* An impact fee does not, however, include "dedication of rights-of-way or easements or construction or dedication of on-site or off-site water distribution, wastewater collection or drainage facilities, or streets, side-walks, or curbs if the dedication or construction is required by a valid ordinance and is necessitated by and attributable to the new development." *Id.* § 395.001(4)(B). An ordinance assessing an impact fee is invalid unless it complies with the procedures outlined in chapter 395, including notice of a hearing on land use assumptions and standards for determining the appropriate impact fee amount. *Id.* §§ 395.011, 395.041.

The City contends that exception (B) of section 395.001(4) is applicable to the fees paid by DeSoto because the fees were required by a valid ordinance and the original bill's author indicated that the bill would not change the way cities required developers to pay for streets.[4] Further, the City points to Attorney General Opinion 97–048 (1997), wherein the opinion holds that an escrow fee required by the City of Sherman, Texas for "curb and gutter, and one-half of the cost of constructing a street" was not an impact fee because of the stated intent of the bill's author.

Conversely, it is DeSoto's position that exception (B) is inapplicable because (1) by its plain wording, it only applies to streets, sidewalks, curbs, etc. which have been dedicated or constructed and not to fees assessed to construct those improvements and (2) by a plain reading of the definition

---

**3.** In other words, as DeSoto states in its brief, "Impact fees are generally described as charges on new development to pay for new public facilities that become necessary as the result of city growth in a particular area."

**4.** The legislative exchange was as follows: Question by committee member—"Some of my cities have subdivision ordinances and we require developers to pay for streets and sew-

ers and all, which has worked pretty well in those cities. Does this change it in any way? Does this keep my cities from doing that if they want to?" Answer by author Senator Farabee—"No, no, there is no thing that would stop the cities from requiring the curbing of streets within the subdivision." Op. Tex. Att'y Gen. No. 97–048 (1997).

of "impact fee." In support of this position, it points out that proposed amendment H.B. 1786, 71st Leg., R.S. (1989) was not enacted, which would have added language to exception (B) such that it would have read in pertinent part, "(B) dedication of rights-of-way or easements, *or payment of a fee in lieu of such dedication.* ..." Because of the plain wording of both the definition of "impact fee" and exception (B) and because this amendment was rejected, DeSoto concludes that fees are not included in the meaning of exception (B). However, this court observes that an argument could also be made that the amendment was rejected because it would be a redundancy, that is, the meaning is already there. DeSoto further points to exception (B)'s companion, exception (A), which reads: "(A) dedication of land for public parks or *payment in lieu of the dedication* to serve park needs[.]" Tex. Loc. Gov't Code Ann. § 395.001(4)(A) (emphasis added). The highlighted language is noticeably absent from exception (B).

■ We are persuaded that DeSoto's interpretation is correct. The plain reading of the statutory definition along with the attempted, but rejected, amendment, the clear wording of the companion exception, and the fact that the Attorney General's opinion considered only the colloquy cited as authority for its conclusion,[5] lead us to conclude that the fees imposed in this case were not subject to exception (B) and were "impact fees" as defined by section 395.001(4) of the local government code.

### C. Ownership

■ The City argues that even if it is determined that the fees were impact fees the trial court lacked jurisdiction because DeSoto lacked standing to demand return of the fees because they were not a party entitled to return of the fees.

■ In order to bring a lawsuit, a plaintiff must have standing. *Coastal Liquids Transp., L.P. v. Harris County Appraisal Dist.,* 46 S.W.3d 880, 884 (Tex. 2001). Standing requires that there be a real controversy between the parties that will be actually determined by the judicial declaration sought. *Nootsie Ltd. v. Williamson County Appraisal Dist.,* 925 S.W.2d 659, 662 (Tex.1996). Standing is a component of subject matter jurisdiction (which is essential to the authority of a court to decide a case), and we consider it under the same standard by which we review subject matter jurisdiction generally. *Tex. Ass'n of Bus.,* 852 S.W.2d at 445–46.

The underlying basis for DeSoto's demand for the return of its impact fees is contained in section 395.025(a), which reads: "On the request of the *owner of the property on which an impact fee has been paid,* the political subdivision shall refund the impact fee...." Tex. Loc. Gov't Code Ann. § 395.025(a) (emphasis added). It can be argued that this language is ambiguous as to whether the owner referred to is the owner that paid the fee or the owner at the time the refund is requested or paid. We resolve this patent ambiguity by examining the language of sections 395.025(e). Subsection (e) reads: "All refunds shall be made to the record owner of the property at the time the refund is paid." *Id.* § 395.025(e). Considering that our determination of legislative intent should be based on the whole statute and not just an isolated portion thereof, *Jones v. Fowler,* 969 S.W.2d 429, 432 (Tex.1998), we hold that DeSoto must be a present property

---

5. Attorney General opinions are not binding on this court. *See Pack v. Crossroads Inc.,* 53 S.W.3d 492, 504 (Tex.App.-Fort Worth 2001, pet. denied).

owner to request and receive a refund and to have standing to pursue the claim.[6]

In the instant case, according to Gary Baker, President of DeSoto at the time DeSoto answered the City's first set of interrogatories, DeSoto did not own "any real property in the Creekview Village Addition, Phases II, III, and IV." Also, DeSoto admitted in its response to the City's request for admission that it currently owned no real property in this area. Hence, it appears DeSoto was not a property owner at that time able to request *and* receive a refund. Moreover, there is no evidence that DeSoto later reacquired property there. A matter admitted in such a fashion is conclusively established[7] and contrary evidence is inadmissible. *Marshall v. Vise,* 767 S.W.2d 699, 700 (Tex.1989). Nonetheless, a party relying on the judicial admissions of another must protect the record by timely objecting to controverting evidence. *Id.* The affidavit of Gary Baker attached to DeSoto's response to the City's amended plea to the jurisdiction states,

> Developer sold all of the lots that had been subdivided to the third-party resident purchasers. However, less than one hundred percent (100%) of the land in the subdivision was sold or transferred to third parties. Although Developer dedicated land for streets, including the Garden Ridge Boulevard Easement, Developer never transferred title of that property.

This statement was objected to by the City but the objection was overruled by the court. We hold that the objection was valid and should have been sustained; the admission was conclusively established.

Further, the City argues that because the findings of fact are unchallenged through a factual or legal sufficiency point, they are binding on the parties and all this court. We agree. *Hotel Partners v. KPMG Marwick,* 847 S.W.2d 630, 632 (Tex.App.-Dallas 1993, pet. denied). The trial court, in its finding of fact number 17, found,

> [t]he plaintiff sold all of its ownership interest in the property of the subdivision when the subdivision was developed . . . in the Creekview Village subdivision. As a matter of law, the abutting property owners of Garden Ridge Boulevard own fee simple title to the center of the street. Because the plaintiff is not the current property owner, the plaintiff does not have standing and is not entitled to refund of any impact fee.

The statement that "[t]he plaintiff sold all of its ownership interest in the property of the subdivision when the subdivision was developed" is a finding of fact, and is unchallenged. DeSoto asserts that finding of fact number 17 is a conclusion of law, which is reviewed *de novo. Austin Hardwoods, Inc. v. Vanden Berghe,* 917 S.W.2d 320, 322 (Tex.App.-El Paso 1995, writ denied). With respect to the finding that DeSoto sold all of its interest, we disagree with DeSoto's contention and hold that the fact finding is binding on DeSoto and this court. Accordingly, considering DeSoto's pleadings and the relevant jurisdictional evidence, we hold that DeSoto did not have standing to seek return of the impact fees because DeSoto was not an "owner of the property on which an impact fee has been paid." *See* TEX. LOC. GOV'T CODE ANN.

---

**6.** It would be nonsensical to adopt DeSoto's argument that the statute means it could *request* a refund because it originally paid the fee although it sold its ownership *before requesting* a refund, thereby precluding receipt

of a *refund* to it. "The best prophet is a common sense." Euripides, *Helen,* (412 B.C.).

**7.** TEX.R. CIV. P. 198.3.

§ 395.025(f). We overrule DeSoto's first issue.

## V. EXCESSIVE FEES

 In its second issue, DeSoto argues that the trial court erred by determining that it did not have jurisdiction to consider DeSoto's claims for the return of its assessed impact fees. Specifically, DeSoto maintains that the City failed to comply with the procedural requirements for adopting the fees found in sections 395.041 to 395.058 of the local government code.[8] By not enacting the required administrative procedures prior to assessing the impact fees, DeSoto argues that the maximum amount of impact fees the City was authorized to assess was $0, and, therefore, the entire fee assessment was subject to return as an excessive fee. Consequently, DeSoto asserts that section 395.074 of the local government code provides a statutory remedy for the improperly assessed impact fees, thus conferring standing upon it and entitling it to recover a penalty "twice the amount of the actual [f]ees DeSoto paid plus attorney's fees and court costs." Because section 395.074 expressly provides to the contrary, we disagree.

Section 395.074 permits the recovery of excessive fees in certain, limited situations, and a party who does not satisfy the requirements of this section lacks standing to recover an excessive fee. *See* TEX. LOC. GOV'T CODE ANN. § 395.074. Titled, "Prior Impact Fees Replaced by Fees Under This Chapter," section 395.074 states in its entirety,

An impact fee that is in place on June 20, 1987, must be replaced by an impact fee made under this chapter on or before June 20, 1990. However, *any political subdivision having an impact fee that has not been replaced under this chapter on or before June 20, 1988, is liable to any party who, after June 20, 1988, pays an impact fee that exceeds the maximum permitted under Subchapter B by more than 10 percent* for an amount equal to two times the difference between the maximum impact fee allowed and the actual impact fee imposed, plus reasonable attorney's fees and court costs.

*Id.* (emphasis added). As stated above, DeSoto argues that the maximum impact fee the City was authorized to assess was $0 because the City did not enact the required administrative procedures prior to assessing the impact fee. As such, DeSoto contends that the impact fee assessed by the City exceeded the maximum amount by $132,988 (the amount assessed), thus allowing DeSoto to recover twice the amount assessed. Section 395.074, however, provides otherwise. Section 395.074 penalizes a political subdivision that fails to replace its impact fee with a fee under chapter 395 not by establishing a maximum impact fee amount of $0, but by providing liability "for an amount equal to two times the difference between the maximum impact fee allowed and the actual impact fee imposed" when the impact fee assessed "exceeds the maximum permitted under Subchapter B by more than 10 percent." *Id.* Thus, the first step in determining when a political subdivision is liable for assessing an excessive fee under section 395.074 is to compare the impact fee actually assessed and the impact fee as it *should* have been assessed pursuant to

8. As this is not disputed by the City, we will accept this assertion as true. *See* TEX.R.APP. P. 38.1(f); *see also* TEX. LOC. GOV'T CODE ANN. §§ 395.011(b), 395.041 (Vernon 1999) (indicating that the City may impose an impact fee only if it is done in a manner conforming with chapter 395 and stating that "[e]xcept as otherwise provided by this chapter, a political subdivision must comply with this subchapter to levy an impact fee.").

Subchapter B. If the impact fee assessed exceeds the maximum fee permitted under Subchapter B by more than 10%, then, and only then, is the political subdivision liable for two times the difference between the maximum impact fee allowed under Subchapter B and the actual fee assessed.

Here, DeSoto merely argued that the maximum impact fee amount the City was authorized to assess was $0. DeSoto has not shown what the maximum impact fee Subchapter B allows to be assessed is, and, consequently, it has not, as the statute requires, shown that the impact fee amount it paid is more than 10% of the maximum amount Subchapter B permits to be assessed. Thus, accepting DeSoto's allegations in its amended petition as true, construing them in DeSoto's favor, and considering the jurisdictional evidence presented to the trial court, we hold that DeSoto has not shown that its claim falls under the scope of section 395.074. Accordingly, DeSoto has not established standing to challenge the alleged excessive fees that section 395.074 apparently aims to eradicate. We hold that the trial court did not err by determining that it did not have jurisdiction to consider DeSoto's claims for the return of its assessed impact fees, and we overrule DeSoto's second issue.

## VI. BREACH OF CONTRACT

In its third issue, DeSoto asserts error on the part of the trial court in determining that it did not have jurisdiction to hear DeSoto's breach of contract claims. DeSoto argues that the City has failed to live up to its agreements regarding the use of the impact fees. The City argues that it is immune from suit from such a contract claim, as well as from DeSoto's other causes of action, and that DeSoto does not have standing to pursue the claim because it has failed to exhaust its administrative remedies.

## A. Standard of Review—Sovereign Immunity

Sovereign immunity defeats a court's subject matter jurisdiction, and governmental entities are immune from suit unless the State consents. *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex.2003). DeSoto, as plaintiff, had the burden to invoke the court's jurisdiction. "In a suit against a governmental unit, the plaintiff must affirmatively demonstrate the court's jurisdiction by alleging a valid waiver of immunity." *Id.* This meant that DeSoto bore the burden to allege facts affirmatively showing that the trial court had jurisdiction. *Tex. Ass'n of Business*, 852 S.W.2d at 446.

If its terms are applicable, chapter 395 of the local government code may constitute a waiver of sovereign immunity and vest the trial court with subject matter jurisdiction. Thus, to maintain a cause of action against a municipality and invoke the trial court's jurisdiction, DeSoto must pursue its cause of action under the local government code, chapter 395. *See City of El Paso v. W.E.B. Invs.*, 950 S.W.2d 166, 169 (Tex.App.-El Paso 1997, writ denied) (reasoning plaintiff must plead a cause of action within the express terms of the Tort Claims Act to invoke the trial court's jurisdiction). If a claim does not fall within the terms of local government code chapter 395, then the City retains its immunity both from suit and from liability. *See Gen. Servs. Comm'n v. Little–Tex Insulation Co.*, 39 S.W.3d 591, 595 (Tex.2001).

## B. Immunity From Liability

The concept of sovereign immunity protects municipalities from lawsuits absent legislative consent. *See Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 405 (Tex 1997), *superseded by statute on other grounds*, *Gen. Servs. Comm'n*, 39 S.W.3d at 593. It

consists of two separate ideas—immunity from suit and immunity from liability. *Id.* DeSoto and the City agree that by entering into written agreements concerning the impact fees, that immunity from liability has been waived. *See Gen. Servs. Comm'n,* 39 S.W.3d at 594.

## C. Immunity From Suit

██ Waiver of immunity from liability by contract does not, however, waive immunity from suit. *See Catalina Dev., Inc. v. County of El Paso,* 121 S.W.3d 704, 705 (Tex.2003). Rather, legislative consent is required, and otherwise, immunity from suit deprives a court of subject matter jurisdiction. *Travis County v. Pelzel & Assocs., Inc.,* 77 S.W.3d 246, 248 (Tex. 2002).

██ Section 51.075 of the local government code reads: "The municipality may plead and be impleaded in any court." TEX. LOC. GOV'T CODE ANN. § 51.075 (Vernon 1999). This court, in its most recent opinion on this topic held that the "sue and be sued" language in section 11.151(a) of the Texas Education Code waived a school district's immunity from suit in a breach of contract suit. *See Serv. Employment Redevelopment v. Fort Worth ISD,* 163 S.W.3d 142, 159 (Tex.App.-Fort Worth 2005, pet. filed).

We find no applicable distinction between the "plead and be impleaded" and the "sue and be sued" phrases. "We acknowledge the statute ... includes only the language 'plead and be impleaded,' and not the language 'sue and be sued,' but ... we find no distinction." *City of Houston v. Clear Channel Outdoor, Inc.,* 161 S.W.3d 3, 7 (Tex.App.-Houston [14th Dist.] 2004, pet. filed). Accordingly, we hold that the language in Section 51.075 of the local government code allows this breach of contract suit against the City.

The City asserts that DeSoto's pleadings "failed to demonstrate a waiver of immunity from suit." We disagree. In its second amended petition, DeSoto asserts claims for a refund of impact fees, excessive amount of fees, breach of contract, and takings claims, with appropriate citations to statutory and constitutional authority to sue and factual assertions supporting those claims. The City's contention in this regard is without merit.

## D. Administrative Remedies

██ The City argues that exhaustion of administrative remedies is a prerequisite to bringing a contract claim against the City. We agree. By invoking the "plea and be impleaded" language of chapter 395 in order to bring suit, we hold that the other provisions of the chapter are also applicable, including initial administrative remedies contained in sections 395.071, 395.077, and other relevant sections of the local government code.

██ In April 2001, DeSoto demanded a refund of its 1993 impact fee escrow by way of a letter to the City Engineer at the City of Lewisville, including a request for any specific forms necessary to process the request. Apparently not receiving a May 2001 response from the city attorney, it again wrote the city by way of the city attorney in October 2001 with a renewed demand. The City Attorney responded with a refusal of the demand—"I do not believe the developer is due a refund at this time. Please advise if you desire additional information." The City Attorney's letter denying DeSoto's demand states in part that the "city of Lewisville has not taken the other steps required by Section 395 *Local Government Code* to impose 'road impact fees.'" Although the City did not enact any of the "other steps," administrative procedures required by local government code sections 395.041–058, it takes the position that a final decision for

the return of impact fees must be made by the city council and the city attorney cannot speak for the council on this matter. Therefore, the City argues that because DeSoto did not seek a decision from the council before filing suit, the case is not ripe for adjudication. "A person who has exhausted all administrative remedies within the political subdivision and who is aggrieved by a final decision is entitled to trial de novo under this chapter." TEX. LOC. GOV'T CODE ANN. § 395.077(a). Further,

> The only way that a political subdivision of the state can act is by and through its governing body.... It is a well-settled rule that the governing authorities of cities can express themselves and bind the cities only by acting together in a meeting duly assembled.... A city council can transact a city's business transactions only by resolution or ordinance, by majority rule of the council ... A city's governing body may not delegate the right to make decisions affecting the transaction of city business.... The governing body is authorized to delegate the right to perform acts and duties necessary to the transaction of the city's business, but can do so only by resolution or ordinance, by a majority vote.

*Central Power & Light Co. v. City of San Juan,* 962 S.W.2d 602, 612–13 (Tex.App.-Corpus Christi 1998, pet. dism'd w.o.j.). No evidence is before this court that the city attorney had been authorized by the city council to act for it on this matter. Furthermore, since a city acts through its council, not through its counsel, even statements by an individual council member are not binding on the City. *Corpus Christi v. Bayfront Assocs.,* 814 S.W.2d 98, 105 (Tex. App.-Corpus Christi 1991, writ denied). Therefore, absent authorization, statements by the City's legal counsel are not binding as they are applied to this matter.

We agree that DeSoto has not exhausted its administrative remedies by not presenting its claim directly to the city council. DeSoto argues that this would be a futile gesture and unnecessary, citing *Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922, 928 (Tex.1998). We disagree. First, as the *Mayhew* court notes, the holdings in that case are based on "the unique circumstances of this case," *id.* at 931, wherein a planned development had been rejected by the City of Sunnyvale, which argued that although the development proposal had been rejected, a variance had not been requested by Mayhew after the rejection, and hence the case was not ripe for adjudication because not all administrative remedies had been exhausted. *Id.* at 931. Unlike the case before us, there was no issue that the proper entity had not rejected the development application. Also, as the supreme court notes, "[a]ny other holding would require the Mayhews to expend their own time and resources pursuing, and the Town's time and resources considering, a development proposal *that the Mayhews would never actually develop*" because of economic impracticality. *Id.* at 932 (emphasis added). This also distinguishes the *Mayhew* case from the one before us. We decline to apply the *Mayhew* holding to the facts before us and hold that DeSoto must exhaust its administrative remedies before it may pursue this suit. Accordingly, we overrule DeSoto's third issue.

## VII. STATE TAKINGS CLAIM

■ In its fourth issue, DeSoto asserts that the trial court erred by determining that its state takings claim was not ripe because no final decision had been made by the City, e.g., DeSoto's administrative remedies were not exhausted. It is the City's position that neither DeSoto's state takings claim under article I, section 17 of

the Texas Constitution, nor the other causes of action, were ripe because of the failure by DeSoto to exhaust its required administrative remedies before filing suit. For the reasons previously set forth, we agree with the City.

■ Citing *Subaru of America Inc. v. David McDavid Nissan Inc.*, 84 S.W.3d 212 (Tex.2002), DeSoto requests that if this court finds that all administrative remedies have not been exhausted, we should hold that the trial court erred in granting the City's plea to the jurisdiction without first abating the cause to afford DeSoto an opportunity to cure the jurisdictional problem. Noting its earlier opinion in *American Motorists Insurance Co., v. Fodge*, 63 S.W.3d 801, 805 (Tex.2001), the court reiterated that "if a claim is not within a court's jurisdiction, and the impediment to jurisdiction cannot be removed, then it must be dismissed; but if the impediment to jurisdiction could be removed, then the court may abate proceedings to allow a reasonable opportunity for the jurisdictional problem to be cured." *Subaru of America Inc.*, 84 S.W.3d at 228. Although this language is permissive ("may abate"), a reading of the entire case indicates that the result is mandatory ("the trial court should abate"). *Id.* We hold that abatement was the appropriate remedy. We overrule DeSoto's fourth issue in part and we sustain it in part. We hold that the trial court erred in granting the City's plea to the jurisdiction without first abating the cause to afford DeSoto a reasonable opportunity to cure its failure to exhaust administrative remedies. This same reasoning applies to the contract claim contained in DeSoto's third issue, *supra.*

## VIII. EVIDENTIARY OBJECTIONS

In a single cross-point, the City argues that the trial court erred by refusing to strike "improper jurisdictional evidence submitted by" DeSoto, specifically being Exhibit A, Paragraphs 10, 11 and 14. Those paragraphs read as follows:

10. Developer sold all of the lots that had been subdivided to the third-party resident purchasers. However, less than one hundred percent (100%) of the land in the subdivision was sold or transferred to third parties. Although Developed dedicated land for streets, including the Garden Ridge Boulevard Easement, Developer never transferred title of that property.

11. In selling the subdivided lots, Developer never assigned any right of reimbursement for the repayment of the impact fees to either the builders or residents who purchased the lots.

14. On October 11, 2001, the City of Lewisville, through correspondence from the City Attorney, refused to refund the fees back to Developer. A true and correct copy of this correspondence is attached hereto as Exhibit 'A-4'. At no time has the City notified Developer of any administrative procedure for attempting to obtain a refund of the paid fees, and the City has never requested or demand that Developer make use of any such administrative procedure. The City simply refused to refund the fees paid by Developer.

The City filed objections to these three paragraphs, which as to Paragraphs 10 and 11 were that the affidavit testimony violated the best evidence rule, constituted hearsay, and was inadmissible as contradicting DeSoto's admissions and responses to interrogatories. As to Paragraph 14, the City's objection was that the affidavit testimony violated the best evidence rule, constituted hearsay, and was a conclusion.

■ We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Owens–Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex.

1998). We will not reverse a trial court for an erroneous evidentiary ruling unless the error probably caused the rendition of an improper judgment. Tex.R.App. P. 44.1; *Owens–Corning Fiberglas Corp.*, 972 S.W.2d at 43. The best evidence rule provides that "[t]o prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required. . . ." Tex.R. Evid. 1002. The rule does not apply unless a party is seeking to prove the contents of a document. *Double Diamond Inc., v. Van Tyne*, 109 S.W.3d 848, 853 (Tex.App.-Dallas 2003, no pet.).

█ With regard to Paragraphs 10 and 11, DeSoto responds that Lewisville had submitted into evidence the plats for the overall property in question and that the sum area of the individual platted lots did not cover 100% of the area contained within the plat, and, therefore, not 100% of the property had been conveyed. Without agreeing whether this conclusion is correct, we agree that since the plats were already in evidence, the best evidence rule has been satisfied, and the complained of statements are not hearsay because they are based on information already in evidence. Whether Baker, the affiant, is qualified to draw such a conclusion is not before this court. We hold that the trial court did not abuse its discretion by overruling those objections to Paragraph 10. However, we have already addressed the question of contradicting admissions and interrogatories and for that reason and on that basis, the City's objection is sustained.

█ Regarding the City's objection that Paragraph 11 violates the best evidence rule, it argued before the trial court that "[t]he deed should be supplied if [Baker] is going to talk about ownership." However, neither party—as far as we can tell from the record—was attempting to prove the contents of the deed(s). Therefore, the best evidence rule does not apply.

*See Van Tyne*, 109 S.W.3d at 853. Moreover, the statement indicates a non-event; it states that something did not occur. It is hard to envision how the deed would be the best evidence of something that never happened. Again, whether Baker is qualified to make such a statement is not before the court. We hold that the trial court did not abuse its discretion by overruling the City's objection to Paragraph 11.

█ With respect to Paragraph 14, considering that the letter from the city attorney was in evidence, the best evidence rule is not implicated, nor is the hearsay rule, because Baker is not repeating what someone else said. We also hold that no "conclusion" is stated. Accordingly, the trial court did not abuse its discretion by overruling the City's objection to Paragraph 14. We overrule the City's cross-point.

## IX. Conclusion

In sum, we hold that DeSoto does not have standing to pursue its return-of-impact-fee claim or its refund-of-impact-fee claim. It also does not have standing to pursue its contract claim or its state takings claim, but these claims should have been abated by the trial court to afford DeSoto an opportunity to cure the exhaustion-of-administrative-remedies jurisdictional defect. The trial court's judgment as to the return of, and refund of, impact fee claims is affirmed. The trial court's judgment as to the contract and state takings claims is reversed and those claims are remanded to the trial court with instructions that the trial court abate its proceedings to afford DeSoto a reasonable opportunity to exhaust its administrative remedies regarding its breach of contract and state takings claims.