ATTORNEY GENERAL OF TEXAS

GREG ABBOTT

July 28, 2010

The Honorable Tommy Williams
Chair, Committee on Transportation and
   Homeland Security
Texas State Senate
Post Office Box 12068
Austin, Texas 78711

Opinion No. GA-0788

Re: Whether, under chapter 395, Local Government
Code, a municipality may grant a credit for a water
line project on sewer impact fees  (RQ-0860-GA)

Dear Senator Williams:

In your capacity as Chair of the Senate Committee on Administration and on behalf of the City of Baytown (the "City"), you ask "[w]hether under chapter 395 a credit for a water line project may be given on sewer impact fees[.]"[1] Local Government Code chapter 395 governs the imposition of impact fees by cities and other political subdivisions. *See* TEX. LOC. GOV'T CODE ANN. §§ 395.001–.082 (Vernon 2005 & Supp. 2009). You inform us that the City has adopted impact fees pursuant to chapter 395 and "entered into an agreement with a developer to give credit of impact fees for certain costs associated with oversizing [of a water line ] . . . in the City's capital improvement plan." Request Letter at 1. This agreement, you tell us, "provided that the developer would 'receive a credit from the impact fees otherwise due from the new development for the costs incurred [for oversizing the water line].'" *Id.*[2] The developer, you explain, "now desires a credit for not only its water impact fees but also its wastewater impact fees." *Id.*[3]

Under chapter 395, a political subdivision may impose impact fees on a new development to fund certain capital improvements. "Impact fee" is defined as "a charge or assessment imposed by a political subdivision against new development in order to generate revenue for funding or recouping the costs of capital improvements or facility expansions[4] necessitated by and attributable

---

[1]Request Letter at 1 (*available at* http://www.texasattorneygeneral.gov).

[2]You specifically note that the request "does not seek the Attorney General to consider the validity of such agreement or the City's ordinances[.]" *Id.* n.1.

[3]You inform us that the City's impact fee ordinance has set "a combined rate of $2,243.46 per service unit and . . . attributes $324.47 to water and $1,918.99 to wastewater services." *Id.* at 1.

[4]We understand the issue here to involve a capital improvement rather than a facility expansion and limit our discussion accordingly. *See id.* at 1–2 (referencing generally "capital improvements").

to the new development." TEX. LOC. GOV'T CODE ANN. § 395.001(4) (Vernon 2005) (footnote added).[5]  As indicated by this definition, a political subdivision may impose an impact fee for the costs of constructing a "capital improvement." *Id.* § 395.001(1), (4); *see id.* § 395.012(a) (providing that "[a]n impact fee may be imposed only to pay the costs of constructing capital improvements or facility expansions"). "'Capital improvement' means any of the following facilities . . . : (A) water supply, treatment, and distribution facilities; wastewater collection and treatment facilities; . . . storm water, drainage, and flood control facilities; . . . and (B) roadway facilities." *Id.* § 395.001(1).[6] Impact fees for such capital improvements are calculated and assessed per service unit, which is defined as "a standardized measure of consumption, use, generation, or discharge attributable to an individual unit of development." *Id.* § 395.001(10); *see id.* §§ 395.001(6) (defining "New development"), 395.014(a)(4)–(7) (discussing requirements for a capital improvement plan with reference to service units in a development), 395.015 (providing for calculation of maximum fee per service unit), 395.016(f) (defining "assessment").

A political subdivision is also authorized to agree to a credit against impact fees. Section 395.019(2) addresses the collection of impact fees when services are not available and agreements granting "credit" for costs incurred by a developer for a capital improvement:

> Except for roadway facilities, impact fees may be assessed but may not be collected in areas where services are not currently available unless:
>
> . . .
>
> (2)  the political subdivision agrees that the owner of a new development may construct or finance the capital improvements . . . and *agrees that the costs incurred or funds advanced will be credited against the impact fees otherwise due from the new development*[.]

*Id.* § 395.019(2) (emphasis added).[7]  The section 395.019(2) language, that the "costs incurred or funds advanced will be credited against the impact fees otherwise due from the new development,"

---

[5]*See also* Tex. Att'y Gen. Op. No. GA-0577 (2007) at 2 ("An impact fee is generally described in one Texas case as a charge 'on new development to pay for new public facilities that become necessary as the result of city growth in a particular area.'") (citing *DeSoto Wildwood Dev., Inc. v. City of Lewisville*, 184 S.W.3d 814, 820 n.3 (Tex. App.—Fort Worth 2006, no pet.)).

[6]Your request letter treats each of these groupings of capital improvements in subdivision 395.001(1)(A) as a separate category. For purposes of this opinion, we adopt this characterization.

[7]The City appears to have entered into the agreement with the developer for the impact fee credit pursuant to section 395.019(2). *See* Request Letter at 1 (asking second question); Brief from David Oliver, Allen Boone Humphries Robinson LLP, at 6–7 (Apr. 23, 2010) (arguing that credit against future impact fees to reimburse the cost of the upsizing is authorized by section 395.019) (on file with the Opinion Committee).

expressly requires that the credit be applied against impact fees due from the new development. *Id.* Your request suggests and we agree that the statute does not, on its face, limit application of the credit to impact fees for the same category as the capital improvement expenditure. *See id.*; *see* Request Letter at 1–2. As relevant here, section 395.019(2) does not expressly require the City to limit application of a credit for oversizing a water line to water impact fees.

You inform us that the City is concerned that another provision in chapter 395, section 395.024, might limit application of the credit to water impact fees and thus preclude its application to sewer impact fees. *See* Request Letter at 2. Section 395.024 requires a governmental entity to account for all funds collected through the adoption of an impact fee and provides in pertinent part that:

> (a) The order, ordinance, or resolution levying an impact fee must provide that all funds collected through the adoption of an impact fee shall be deposited in interest-bearing accounts *clearly identifying the category of capital improvements* . . . within the service area for which the fee was adopted.
>
> . . . .
>
> (c) Impact fee funds may be *spent only for the purposes for which the impact fee was imposed* as shown by the capital improvements plan and as authorized by this chapter.

TEX. LOC. GOV'T CODE ANN. § 395.024(a), (c) (Vernon 2005) (emphasis added). Section 395.024 does not expressly require a political subdivision to limit the purposes for which a credit for a developer's cost of a capital improvement may be granted or applied. *See id.*; *see also Galbraith Eng'g Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 867 (Tex. 2009) (explaining that, when construing a statute, the "primary objective is to give effect to the Legislature's intent as expressed in the statute's language"). The statute, by its terms, requires a governmental entity, first, to identify for accounting purposes the category of capital improvement to which impact fee revenues relate and, second, limit the expenditure of the impact fee revenue to the purposes—presumably the identified category of capital improvement—for which the fees were imposed. *See* TEX. LOC. GOV'T CODE ANN. § 395.024(a), (c) (Vernon 2005).

The issue presented here is whether the section 395.024 accounting and expenditure limitations with respect to a "category of capital improvements" implicitly limit the purposes for which a political subdivision may grant impact fee credits under section 395.019(2). The section 395.019(2) credit for a developer's cost of constructing a capital improvement is, on its face, (1) a method to finance capital improvements in a new development without up-front expenditure of governmental funds; and (2) a substitute for the impact fees that would otherwise be collected from the developer and used to pay for, or reimburse the governmental entity for, the costs of the improvements. *See id.* § 395.019(2). It could be argued that, because the impact fee credit serves the same function as the impact fees, the limitation on the expenditure of impact fee revenues in

section 395.024 applies with equal force to the purposes for which an impact fee credit may be granted and applied under section 395.019(2). *See id.*; *see also* Request Letter at 2 (because "impact fees can only be spent for the purposes imposed, it could be argued that impact fee credits may only be granted for the impact fees corresponding to the category of the capital improvement project"). In other words, it could be argued that credit for the cost of a category of a capital improvement—such as oversizing of a water line—may be granted only to reduce impact fees for the same category of capital improvement, i.e., water impact fees. Otherwise, an impact fee imposed for one category of capital improvement (water impact fees) would effectively be used to pay for a different category of capital improvement (wastewater improvement), contrary to section 395.024.

While this limiting effect of section 395.024 on section 395.019(2) has a certain logic, we cannot say that the Legislature clearly intended to generally limit the grant or application of impact fee credit to the same category of capital improvement. *Cf. Galbraith Eng'g Consultants, Inc.*, 290 S.W.3d at 867 (explaining that, when construing a statute, the "primary objective is to give effect to the Legislature's intent as expressed in the statute's language"). Again, neither section 395.019(2) nor section 395.024 or any other provision in chapter 395 expressly limits a governmental entity's grant of an impact fee credit with respect to capital improvements generally or with respect to the categories of water and wastewater improvements specifically. TEX. LOC. GOV'T CODE ANN. §§ 395.019(2), .024 (Vernon 2005); *see Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 866 (Tex. 1999) ("[I]t is a fair assumption that the Legislature tries to say what it means, and therefore the words it chooses should be the surest guide to legislative intent."). In fact, section 395.019(2) authorizes developers' costs to be credited against "impact fees otherwise due from the new development." TEX. LOC. GOV'T CODE ANN. § 395.019(2) (Vernon 2005). The impact fees attributable and due from a new development are calculated and assessed as a single amount per service unit in the development. *See id.* §§ 395.001(6), (10), .014(a)(4)–(7), .015. When the Legislature has intended to limit the application of a credit for developer costs in chapter 395, it appears to have done so expressly. *See id.* § 395.023 (providing that "[a]ny construction of, contributions to, or dedications of off-site *roadway* facilities agreed to or required . . . shall be credited against *roadway* facilities impact fees otherwise due from the development") (emphasis added).

It is an established principle of statutory construction that "'every word of a statute must be presumed to have been used for a purpose. Likewise, . . . every word excluded from a statute must also be presumed to have been excluded for a purpose.'" *Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer*, 904 S.W.2d 656, 659 (Tex. 1995) (quoting *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (1981)). As explained by the Texas Supreme Court, this principle of statutory construction "is related to a more general rule that courts should not insert words in a statute except to give effect to clear legislative intent." *Id.* (citing *Hunter v. Fort Worth Capital Corp.*, 620 S.W.2d 547, 552 (Tex. 1981)). In chapter 395, we do not perceive a clear legislative intent, with the noted exception above, to limit the grant or application of credits to any specific category of capital improvements. Therefore, we cannot effectively add such limiting words to the statute by construing section 395.019(2) to require a political subdivision to limit application of a credit to the same category of impact fees.

Accordingly, while a political subdivision may limit the application of a credit for developer costs for a water project to water impact fees, we cannot conclude that chapter 395 requires a political subdivision to do so. Thus, in answer to your first question, chapter 395 does not preclude the City from applying a credit for a developer's cost of a water line project to sewer impact fees due from the development.[8] Because your second question is premised on a contrary conclusion, we need not address it.[9]

---

[8]Whether in any particular instance, a city has granted a credit for a developer's cost of a capital improvement project that may be applied against a different category of impact fees than the credit will, of course, depend on the city's impact fee ordinance and agreement with the developer.

[9]Your second question asks "[if] not, whether the City can enter into an agreement under Section 395.019(2), which would allow such credit[.]" Request Letter at 1.

## S U M M A R Y

Local Government Code chapter 395 governs the imposition of impact fees by cities and other political subdivisions. Chapter 395 does not evidence a clear legislative intent, with one exception inapplicable here, to limit the grant or application of credit—for costs incurred by a developer for constructing or financing a category of capital improvement—to any specific category of capital improvement. Therefore, Local Government Code section 395.019(2) cannot be construed to require a political subdivision to limit the application of a water project credit to water impact fees. Accordingly, while a governmental entity may limit the application of a credit for developer costs for a water project to water impact fees, we cannot conclude that chapter 395 requires a political subdivision to do so. Thus, chapter 395 does not preclude a city from applying a credit for a developer's cost of a water line project in a city's capital improvement plan to sewer impact fees due from the new development.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

ANDREW WEBER
First Assistant Attorney General

NANCY S. FULLER
Chair, Opinion Committee

Sheela Rai
Assistant Attorney General, Opinion Committee