

NUMBER 13-13-00345-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

THE STATE OF TEXAS,                                              Appellant,

v.

MICHAEL CLACK,                                                    Appellee.

**On appeal from the 28th District Court
of Nueces County, Texas.**

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Perkes and Longoria
Memorandum Opinion by Chief Justice Valdez**

Appellant, the State of Texas, challenges the trial court's order granting appellee

Michael Clack's motion to suppress.  By one issue, which we construe as three, the State

argues that:  (1) Clack lacked standing to complain of the search because the vehicle was

not his; (2) the search and seizure was appropriate under the inventory exception to the

warrant requirement; and (3) the search and seizure was appropriate under the automobile exception to the warrant requirement. We affirm.

## I. BACKGROUND

The State charged Clack with aggravated robbery. *See* TEX. PENAL CODE ANN. § 29.03 (West, Westlaw through 2013 3d C.S.). An arrest warrant was issued for Clack in Corpus Christi, Texas, but the police were unable to locate him. The arrest warrant was therefore turned over to the U.S. Marshal's task force. Clack was discovered at an apartment complex in San Antonio, Texas, and subsequently arrested. Without a warrant, the San Antonio police impounded the car Clack was driving in the parking lot of the apartment complex. The police later searched the vehicle, also without a warrant. During the course of the search of the vehicle, the police found a gun, face-mask, hooded sweatshirt, and gloves.

Clack filed a motion to suppress, arguing that the warrantless impoundment and search of the car violated his Fourth Amendment right against unreasonable search and seizure. *See* U.S. CONST. amend. IV. At the hearing, the State argued that the impoundment and search of the vehicle were constitutional pursuant to both the inventory search exception and the automobile exception.

At the hearing, Mario Bedia, a detective for the Nueces County Sherriff's Department, testified that he was in charge of the case against Clack. He explained that the offense in question occurred on October 20, 2012. Detective Bedia testified that he completed an arrest warrant and attached to it an affidavit in which he described the vehicle the suspect was known to be driving as a tan colored Buick Lesabre, license plate BGS 2233. Clack's cousin was the registered owner of the vehicle. On cross-

2

examination, Detective Bedia explained that the vehicle description was not included in the text of the arrest warrant. He stated that the victim in the case was able to see that the suspect drove away after committing the crime in a light-colored vehicle, but that she was unable to identify the make or model of the vehicle. However, he included the vehicle in the affidavit because during his investigation, he reviewed a video of Clack driving the vehicle in question on the morning of the alleged aggravated robbery.[1] He testified that in the video, Clack was wearing gloves, a face-mask, and a black hoodie while driving through a bank. Detective Bedia testified that he had probable cause to believe that those items would be in the vehicle. On cross-examination, Detective Bedia further admitted that he could not be certain that Clack was the person driving the vehicle in the video because the driver was wearing a mask.

Detective Bedia explained that he asked the police in San Antonio to look for the gloves, face-mask, and hoodie. Detective Bedia also testified that he had received tips from Crime Stoppers informing him that Clack had been driving his car in the time frame between the alleged offense and Clack's arrest. Therefore, he informed the U.S. Marshals that Clack was still driving the vehicle. On cross-examination, defense counsel asked, "At the time that they contacted you, you gave them a direction to go through his car and get that evidence. Isn't that correct?" Detective Bedia responded, "Yes, ma'am." Detective Bedia then clarified that he asked them to impound the vehicle so that he could take photos because he believed the car was used in the commission of the offense.

Mark Seguin, a deputy with the U.S. Marshal Service in San Antonio, testified that he received the arrest warrant for Clack, along with photos of Clack and a description of

---

[1] The prosecutor questioned Bedia regarding "other videos" in which Detective Bedia saw Clack wearing a t-shirt. No evidence or testimony explained the details of the other videos.

the vehicle he was driving. Deputy Seguin testified that they discovered Clack's vehicle parked in a parking space in the apartment parking lot. It was not impeding traffic. Deputy Segiuin explained that the vehicle was impounded because it was "part of an element of the crime they were investigating." Deputy Seguin testified that he assisted with the inventory search of Clacks's vehicle. He explained that he did not make the decision to impound the car because the San Antonio police department determines whether cars should be impounded. He testified that they were asked to look for certain items in the vehicle.

David Arcuri, a detective with the San Antonio Police Department, testified that he impounded the vehicle pursuant to the impound policy of the city of San Antonio because Clack was not the registered owner of the vehicle, was from out of town, and did not have family present. Detective Acuri testified that if there would have been a relative there to release the vehicle, he still would have impounded it because it was his understanding that the vehicle was used in a crime. Acuri testified that the vehicle was parked lawfully and was not impeding traffic. He explained that his only knowledge of the offense was that he had been told that an aggravated robbery had been committed. Detective Acuri agreed that Clack was in "care custody and control" of the vehicle.

The trial court granted Clack's motion to suppress, and the State filed a timely notice of appeal and a request for findings of facts and conclusions of law. Subsequently, the trial court made the following findings of fact and conclusions of law:

Trial Court Findings of Fact:

1.) The Court finds that Mr. Michael Clack was arrested on November 7, 2012 by an arrest warrant for an alleged offense that occurred on October 12, 2012. Mr. Clack was arrested on the warrant in San Antonio,

4

Texas. The Court finds that the arrest warrant did not give a description of Mr. Clack other than his weight and ethnicity.

2.) The Court finds that no search warrant was issued in the case.

3.) The Court finds that the defendant was arrested at an apartment complex on O'Conner Road in San Antonio, Texas by US Marshalls [sic] and San Antonio Police Officers. When the defendant was apprehended and arrested by the stairs at the apartment complex[, t]he defendant was not in his vehicle or near his vehicle.

4.) The defendant's vehicle was legally parked in a parking space which is not restricted nor gated, nor was the vehicle creating a hazard.

5.) The Court finds that Detective Bedia requested that the police in San Antonio impound and search defendant's vehicle because it still may have evidence of the crime in his vehicle and [D]etective Bedia wanted pictures of the vehicle.

6.) The Court finds based on Deputy Seguin's testimony that there were approximately seven (7) other law enforcement officers present at the scene who had cell phones and ability to take pictures at the scene.

7.) The Court finds that no one knows how the key to the defendant's vehicle [was] obtained nor how the vehicle was open.

8.) The Court finds based on Deputy Seguin's testimony that the officers were asked to look for certain things in the vehicle.

9.) The Court also took into consideration the credibility and demeanor of the witnesses while testifying at the motion to suppress.

Trial Court Conclusions of Law:

1.) The Court concludes that no exigent circumstances existed to search the vehicle without a warrant. There were enough officers present at the scene to secure the vehicle so other officers could obtain a warrant.

2.) The Court concludes that there was no credible evidence presented that the vehicle was used in connection with a recent crime. Nor was there a necessity to protect Defendant's vehicle.

3.) The Court concludes that there was no credible evidence presented that showed a connection between the arrest and the vehicle.

5

4.) The Court concludes that [there] was no credible evidence that the search of the vehicle was intended to produce and [sic] inventory but was used as a ruse for rummaging in order to discover incriminating evidence.

## II.   STANDARD OF REVIEW

We review a trial court's decision on a motion to suppress evidence under a bifurcated standard. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). The trial court's determinations of historical facts and mixed questions of law and fact that rely on credibility are given almost total deference when supported by the record. *Id.* But when mixed questions of law and fact do not depend on the evaluation of credibility and demeanor, we review the trial judge's ruling de novo. *Id.* Whether the facts known to the officer at the time of the detention amount to reasonable suspicion is a mixed question of law that is reviewed de novo on appeal. *Ornelas v. United States*, 517 U.S. 690, 699 (1996) (holding that determination of reasonable suspicion should be reviewed de novo on appeal, with deference to judges' findings of historical facts); *State v. Mendoza*, 365 S.W.3d 666, 670 (Tex. Crim. App. 2012). Accordingly, when a trial judge rules on a motion to suppress and makes explicit factual findings, an appellate court must determine whether the findings are supported by the record, using an abuse of discretion standard and giving the trial court almost "total deference." *State v. Kerwick*, 393 S.W.3d 270, 274 (Tex. Crim. App. 2013); *see State v. Castleberry*, 332 S.W.3d 460, 465 (Tex. Crim. App. 2011) ("When the trial judge makes explicit findings of fact, we afford those findings almost total deference as long as the record supports them, regardless of whether the motion to suppress was granted or denied."). The Court must then undertake a de novo review when considering whether the findings of fact support the legal conclusions of the

6

trial court. *Kerwick*, 393 S.W.3d at 274; *see State v. Sheppard*, 271 S.W.3d 281, 288 (Tex. Crim. App. 2008).

When a defendant seeks to suppress evidence because of an illegal search, the defendant bears the initial burden to prove that the police seized him or performed a search without a warrant. *McGee v. State,* 105 S.W.3d 609, 613 (Tex. Crim. App. 2003*)* Once the defendant establishes that a search or seizure occurred and that no warrant was obtained, the burden shifts to the State to produce either evidence of a warrant, or to prove the reasonableness of the search or seizure pursuant to one of the recognized exceptions to the warrant requirement. *Id.*

### III.   STANDING

The State argues that Clack failed to establish a reasonable expectation of privacy in the vehicle because he was not the registered owner of the vehicle and because "[t]he record shows at most, that [Clack] was the sole occupant and driver of the vehicle on different dates and that the registered owner is the defendant's cousin."[2] We disagree.

Standing is reviewed de novo because it is a question of law. *Kothe v. State*, 152 S.W.3d 54, 59 (Tex. Crim. App. 2004). However, we give deference to the trial court's

---

[2] While at the hearing on the motion to suppress, the State did not argue that Clack lacked standing, standing can be raised on appeal for the first time because a defendant's "privacy interest in the premises searched is an element of their Fourth Amendment claim, which they bear the burden of establishing." *See Klima v. State*, 934 S.W.2d 109, 110 (Tex. Crim. App. 1996). Regardless, as an evidentiary matter, the State did not present any evidence contrary to the evidence presented at the hearing on the motion to suppress indicating that Clack had a reasonable expectation of privacy or that he had care custody or control of the vehicle. Instead, when discussing Clack's actions, the State referred to the vehicle repeatedly as "his car." Specifically, the State argued, "They observe him driving the car, they observed him park the car, they're watching him, they're watching him come back out, and as he's about to get back to his car, they arrest him." In fact, all of the State's arguments at the hearing were an attempt to support its assertion that the items found in the vehicle belonged to Clack and therefore indicated that Clack was in care, custody, and control of the vehicle when it was driven from Corpus Christi to San Antonio and when the police discovered and impounded it.

factual findings. *Id.* In a motion to suppress, the movant has the burden to establish standing. *State v. Klima*, 934 S.W.2d 109, 110 (Tex. Crim. App. 1996) (en banc).

A person has standing to challenge a search only when he has a legally protected expectation of privacy. *Parker v. State*, 182 S.W.3d 923, 925 (Tex. Crim. App. 2006). A person has an expectation of privacy even in a vehicle that he does not own if he has gained possession of the car from the owner with the owner's consent or from someone authorized to give permission to drive it. *Matthews v. State*, 165 S.W.3d 104, 112 (Tex. App.—Fort Worth 2005, no pet.); *Reyes v. State*, 910 S.W.2d 585, 589 (Tex. App.—Amarillo 1995, pet. ref'd). In *Flores v. State*, the court of criminal appeals found that an appellant did not have an expectation of privacy in a car, which the police found abandoned in a parking lot with a dead body in it, when the car was registered in the appellant's mother's name and "no evidence offered at the hearing demonstrated that appellant had any expectation of privacy in the car. None of the evidence offered demonstrated that appellant had any interest in or right to use the car." *Flores v. State*, 871 S.W.2d 714, 720–21 (Tex. Crim. App. 1993) (en banc).

In the present case, Detective Bedia testified that during his investigation, he witnessed Clack driving the vehicle as its sole occupant in multiple videos. Detective Bedia further testified that he had received tips from Crime Stoppers indicating that Clack had been driving the vehicle in the time period between the alleged crime and the arrest. Detective Bedia therefore informed the U.S. Marshals that Clack was still driving the vehicle. In addition, Deputy Seguin referred to the vehicle as "his car," while testifying about Clack's arrest. Moreover, before the car was impounded, Clack was found in the same apartment complex as the car, and Detective Arcuri testified that Clack was "in care

8

custody and control" of the vehicle at the time.  *State v. Betts*, 397 S.W.3d 198, 203 (Tex. Crim. App. 2013) (explaining that one of the factors in determining whether the defendant had a reasonable expectation of privacy in a yard owned by some else was whether "he had complete dominion or control" over the property).  Furthermore, there was no evidence in the record that the vehicle was reported stolen.  *See Jackson v. State*, 745 S.W.2d 4, 8 (Tex. Crim. App. 1988) (en banc); *see also State v. Hill,* No. 07-11-0054-CR, 2011 WL 3587435 (Tex. App.—Amarillo Aug. 16, 2011, no pet.) (finding that an appellant had a reasonable expectation of privacy in a car that he did not own when he had been seen driving it on multiple occasions, his personal items were found in the trunk, and there was no evidence the car was stolen).

In its findings of fact, the trial court referred to the car as "defendant's vehicle."  We find that there is some evidence to support this factual determination made by the trial court.  *See Kothe v. State*, 152 S.W.3d at 59; *see also Hill*, 2011 WL 3587435, at *2.

The State's first issue is overruled.

### IV.    INVENTORY SEARCH EXCEPTION

The State argues that the trial court erred by granting Clack's motion to suppress because the items were recovered from the vehicle as a result of an inventory search after a lawful impoundment.  To constitute a permissible inventory search, a vehicle must have been lawfully impounded, and if the impoundment was not lawful, any search and seizure is not reasonable under the Fourth Amendment.  *See Benavides v. State*, 600 S.W.2d 809, 810–11 (Tex. Crim. App. [panel op.] 1980).

The State specifically contends that Clack's vehicle could be lawfully impounded because Clack was arrested pursuant to a search warrant, was not the registered owner

9

of the vehicle, was from out of town, and did not have any family present. The State cites case law indicating that a vehicle may be impounded when "the driver is removed from his automobile and placed under custodial arrest and no other alternatives are available other than impoundment to insure the protection of the vehicle." *Daniels v. State,* 600 S.W.2d 813, 815 (Tex. Crim. App. [panel op.] 1980). However, here, the police could not impound the car on this basis because Clack was never removed from the car. *See id.* The record reveals, as the trial court found in its findings of fact, that "[Clack] was apprehended and arrested by the stairs at the apartment complex. [Clack] was not in his vehicle or near his vehicle."

Moreover, the trial court specifically determined that impoundment was not necessary to protect the vehicle and that the impoundment of the vehicle was based on Detective Bedia's concern that there might still be evidence of the crime in the vehicle, as was supported by his testimony. Accordingly, based on the evidence and testimony presented at the hearing, the trial court found that the car was impounded in order to aid the police in their search for evidence, not in order to protect the vehicle. *See Kerwick,* 393 S.W.3d at 274.

Because Clack was never removed from the vehicle and because the trial court found, as was supported by the record, that impoundment was not necessary to protect the vehicle, the State's second issue is overruled.[3]

_____

[3] The State does not argue that the police were entitled to impound the vehicle because it was evidence of a crime. *See* TEX. R. APP. P. 38.1; *Lagaite v. State*, 995 S.W.2d 860, 866 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd) (holding that a vehicle could be impounded because there was a reasonable connection between the vehicle and the crime as there was evidence that it was used in the commission of the crime). Moreover, it does not contend, and cites no law supporting, that there is any evidence that the vehicle itself was used in the commission of the crime; nor has it challenged the trial court's explicit finding that "there was no credible evidence presented that the vehicle was used in connection with a recent crime." *See* TEX. R. APP. P. 38.1; *DeSoto Wildwood Dev., Inc. v. City of Lewisville*, 184 S.W.3d 814, 822 (Tex.

10

## V.    AUTOMOBILE EXCEPTION

The State also contends that the search of Clack's vehicle was appropriate for Fourth Amendment purposes under the automobile exception because the officers had probable cause to believe there was evidence of the crime in the vehicle.[4]  Under the automobile exception, law enforcement officials may conduct a warrantless search of a vehicle if it is readily mobile and there is probable cause to believe that it contains evidence of a crime.  *Neal v. State,* 256 S.W.3d 264, 282 (Tex. Crim. App. 2008); *See Keehn v. State*, 279 S.W.3d 330, 335 (Tex. Crim. App. 2009) (holding that police had the right to enter and search a vehicle parked in the defendant's driveway based on probable cause that there was evidence of the crime in the vehicle immediately after they saw a propane tank through the window of the vehicle).

The State however did not present evidence supporting that the officers had probable cause to believe that Clack's vehicle contained evidence of the crime at the time they impounded it.  *See id.*  The State argues that it presented the following evidence showing that the officers had probable cause to search the vehicle:  (1) three law enforcement officers testified that they believed the vehicle contained evidence of the crime; (2) Detective Bedia testified he believed the vehicle contained the gloves, hoodie, and facemask he saw in videos he had seen of the defendant driving the vehicle; (3) Detective Bedia testified that he had received crime stopper tips indicating that Clack had

---

App.—Fort Worth 2006, no pet.) (reasoning that unchallenged findings made by the trial court are binding on courts of appeals).

[4]  The State does not argue and has provided no law indicating that the police were entitled to search appellant's vehicle because it was used in the commission of the crime; moreover, as noted in footnote 3 the State does not challenge the trial court's finding that "there was no credible evidence presented that the vehicle was used in connection with a recent crime." *See* TEX. R. APP. P. 38.1; *DeSoto Wildwood Dev., Inc.*, 184 S.W.3d at 822.

been driving the car in the time period between the commission of the crime and the Clack's arrest.

In sum, the evidence at most shows that: (1) Clack had been seen driving the car wearing items that may have been evidence of the crime over two weeks prior to the date the car was impounded; and (2) Clack had been seen driving the car at some point after. Given the significant time lapse between the date Detective Bedia viewed the potential evidence in the car and the date the car was discovered by police, the State did not present evidence to support probable cause that evidence of the crime was still present in the car at the time it was searched. *See Guerra v. State*, 860 S.W.2d 609, 611 (Tex. App.—Corpus Christi 1993, pet. ref'd) (reasoning that when a search warrant is issued, "[p]robable cause ceases to exist when, at the time the search warrant is issued, it would be unreasonable to presume that the items remain at the suspected place").[5]

The State's third issue is overruled.

## VI. CONCLUSION

We affirm the trial court's order granting Clack's motion to suppress.

**/s/ Rogelio Valdez**
Rogelio Valdez
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
11th day of September, 2014.

---

[5] In addition, even if the officers had probable cause to search Clack's car, we determined in the previous section that the trial court properly concluded that there was no evidence showing that the vehicle was lawfully impounded. The State fails to explain or present any argument as to whether evidence from a search based on probable cause is admissible after a car has been unlawfully impounded. *See* TEX. R. APP. P. 38.1.

12