

# COURT OF APPEALS

**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

## NO. 02-12-00230-CV

JAMES SCOTT TRIMM AND WIFE                                          APPELLANTS
INGRID TRIMM

V.

U.S. BANK, NATIONAL                                                    APPELLEE
ASSOCIATION, AS TRUSTEE OF
J.P. MORGAN MORTGAGE
ACQUISITION CORP. 2005-OPT1

----------

FROM THE 96TH DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 96-249211-10

----------

## MEMORANDUM OPINION[1]

----------

Appellants James Scott and Ingrid Trimm appeal from a summary

judgment in favor of Appellee U.S. Bank, National Association, as Trustee of J.P.

---

[1]*See* Tex. R. App. P. 47.4.

Morgan Mortgage Acquisition Corp. 2005-OPT1 (U.S. Bank). We reverse and remand.

## Background

The Trimms initiated this suit to contest U.S. Bank's right to foreclose on their home. The Trimms executed a home-equity, adjustable-rate note on April 5, 2005, payable to H&R Block Mortgage Corporation (H&R Block) in the principal amount of $88,000 (the note). The note was secured by a deed of trust on the Trimms' home in Hurst, Texas (the deed of trust). By allonges also dated April 5, 2005, H&R Block indorsed the note to Option One Mortgage Corporation (Option One), and Option One indorsed the note in blank. In November 2005, H&R Block transferred the deed of trust to Option One.

The Trimms defaulted on the note. In July 2007, the Trimms and Option One entered into a Forbearance Agreement under which Option One agreed to postpone foreclosure proceedings to allow the Trimms to cure their default. Under the terms of the repayment plan set forth in Forbearance Agreement, the Trimms were required to make a payment of $2,500 by July 24, 2007, followed by six monthly plan payments of $1,570.22 starting on August 25, 2007, and ending on January 25, 2008. The Trimms also released Option One from any and all claims, known or unknown, arising from or relating to the loan[2] or to the origination or servicing of the loan.

---

[2]"The loan" refers to the note and its securing instrument, the deed of trust.

During the term of the Forbearance Agreement, the interest rate on the loan changed. U.S. Bank claims Option One sent notice of the interest-rate increase to the Trimms by mail on or about October 17, 2007. The Trimms claim they never received written notice of the rate increase. Even though the interest rate increased, Option One did not increase the plan payments under the Forbearance Agreement but opted to demand payment of the additional sums accrued as a result of the interest-rate increase at the end of the term of the Forbearance Agreement. The Trimms made their final plan payment in late January 2008. According to U.S. Bank, they refused to pay the additional sums due as a result of the interest-rate increase and failed to make any additional payments on the note.

The Trimms filed suit against U.S. Bank in November 2010. According to the Trimms' first amended petition, U.S. Bank instituted three separate foreclosure proceedings against them. The Trimms alleged that if U.S. Bank is the owner and holder of the deed of trust and the Forbearance Agreement, U.S. Bank breached those agreements. The Trimms further alleged that the terms of the Forbearance Agreement are unconscionable and that U.S. Bank violated the Fair Debt Collection Practices Act and committed common-law and statutory fraud. The Trimms also sought a declaratory judgment to determine whether U.S. Bank is the owner and holder of the note, the deed of trust, and the Forbearance Agreement and to determine U.S. Bank's and the Trimms' rights

3

and duties in connection with the note, deed of trust, and Forbearance Agreement.[3]

U.S. Bank filed a traditional motion for summary judgment, claiming it was entitled to judgment on its affirmative defenses of release, waiver, and estoppel based upon the release language in the Forbearance Agreement. In the alternative, U.S. Bank claimed that the statute of frauds barred the Trimms' fraud claims and that it was entitled to summary judgment on all of the Trimms' claims because its summary judgment evidence conclusively disproved one or more essential elements of each of their claims.

According to U.S. Bank's summary judgment evidence, on or about April 30, 2008, American Home Mortgage Servicing, Inc. (AHMSI) acquired "substantially all of the assets constituting the residential mortgage servicing business of [Option One], including without limitation the servicing rights related to the Loan . . . making AHMSI the servicer of the Loan." On December 31, 2008, AHMSI, claiming to be the "successor-in-interest" to Option One, executed an assignment/transfer of lien "memorializing" the transfer of the loan to U.S.

_____

[3]In their original petition, the Trimms also brought a claim under the Texas Deceptive Trade Practices Act (DTPA). Because this claim was omitted from the Trimms' amended petition, which was the live pleading at the time of the summary judgment hearing, the Trimms effectively nonsuited their DTPA claim. *See FKM P'ship, Ltd. v. Bd. of Regents of Univ. of Houston Sys.*, 255 S.W.3d 619, 632 (Tex. 2008) ("In civil causes generally, filing an amended petition that does not include a cause of action effectively nonsuits or voluntarily dismisses the omitted claims as of the time the pleading is filed.").

Bank. U.S. Bank appointed AHMSI as its servicer of the loan in April 2011. U.S. Bank claims it is the current owner and holder of the note and deed of trust.

In addition to a summary judgment response, the Trimms filed a motion to strike portions of U.S. Bank's summary judgment evidence and filed supplemental evidence in support of their response. U.S. Bank made written objections to the Trimms' supplemental evidence, all of which the trial court sustained. The trial court granted U.S. Bank's motion without stating the grounds upon which it based its rulings and denied the Trimms' motion to strike. After unsuccessfully seeking a new trial, the Trimms brought this appeal.

## Standard of Review

We review a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). A defendant who conclusively negates at least one essential element of a cause of action is entitled to summary judgment on that claim. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010); *see* Tex. R. Civ. P. 166a(b), (c). Once the defendant produces sufficient evidence to establish the right to summary judgment, the

burden shifts to the plaintiff to come forward with competent controverting evidence that raises a fact issue. *Van v. Pena*, 990 S.W.2d 751, 753 (Tex. 1999).

Also, a defendant is entitled to summary judgment on an affirmative defense if the defendant conclusively proves all the elements of the affirmative defense. *Frost Nat'l Bank*, 315 S.W.3d at 508–09; *see* Tex. R. Civ. P. 166a(b), (c). To accomplish this, the defendant-movant must present summary judgment evidence that conclusively establishes each element of the affirmative defense. *See Chau v. Riddle*, 254 S.W.3d 453, 455 (Tex. 2008).

## Discussion

### I. Evidentiary Issues

We construe the Trimms' sixth issue as a challenge to the trial court's denial of their motion to strike U.S. Bank's summary judgment evidence and its rulings on U.S. Bank's objections to the Trimms' supplemental summary judgment evidence. We review a trial court's ruling sustaining or overruling objections to summary judgment evidence for an abuse of discretion. *See Paciwest, Inc. v. Warner Alan Props., LLC*, 266 S.W.3d 559, 567 (Tex. App.—Fort Worth 2008, pet. denied). For the reasons explained below, we overrule the Trimms' sixth issue.

### A. The Trimms' motion to strike U.S. Bank's summary judgment evidence

U.S. Bank's summary judgment evidence included the affidavit of Joseph Kaminski, which provides, in relevant part, as follows:

6

12.     On or about April 30, 2008, substantially all of the assets constituting the residential mortgage servicing business of [Option One], including without limitation the servicing rights related to the loan, were acquired by [AHMSI], making AHMSI the servicer of the loan.

13.     On or about December 31, 2008, AHMSI, as successor-in-interest to [Option One], executed an Assignment of Deed of Trust/Transfer of Lien memorializing the transfer of the loan to [U.S. Bank], who is the current owner and holder of the loan.  A true and correct copy of this Assignment is attached hereto as Exhibit No. 1E and is incorporated herein for all purposes.

In their motion to strike, the Trimms objected to these two paragraphs, complaining that (1) they are not based on Kaminski's personal knowledge and (2) they are conclusory.

Rule 166a(f) requires that affidavits supporting or opposing summary judgment must "be made on personal knowledge, shall set forth facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."  Tex. R. Civ. P. 166a(f); *see Ryland Grp., Inc. v. Hood*, 924 S.W.2d 120, 122 (Tex. 1996).  An affidavit must disclose the basis on which the affiant has personal knowledge of the facts asserted.  *Radio Station KSCS v. Jennings*, 750 S.W.2d 760, 762 (Tex. 1988).  An affiant's position or job responsibilities can qualify the affiant to have personal knowledge of facts and establish how the affiant learned of the facts.  *Valenzuela v. State & Cnty. Mut. Fire Ins. Co.*, 317 S.W.3d 550, 553 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (stating that affidavits demonstrating personal knowledge often state affiant's knowledge through affiant's position and

7

specifically described job duties); *Cooper v. Circle Ten Council Boy Scouts of Am.*, 254 S.W.3d 689, 698 (Tex. App.—Dallas 2008, no pet.) (holding that affiant's testimony that, as Scout Executive and CEO of defendant organization, he had knowledge concerning its operation and organization sufficient to demonstrate manner in which he became familiar with facts at issue).

Kaminski stated in his affidavit that he is employed by AHMSI, the current servicer of the loan for U.S. Bank, as an "FC Special Asset Specialist." He averred that in his capacity as an FC Special Asset Specialist, he has "knowledge of the operations and actions of AHMSI and the transferring, possession, and servicing of AHMSI's loans, including the loan . . ." and that he had "personal knowledge of each of the matters stated in [the] affidavit." Kaminski further averred that AHMSI is the custodian of records "with respect to the indebtedness of [the Trimms] that is the subject of this suit," that he reviewed AHMSI's records related to the loan, and that these records supported his affidavit testimony. Because Kaminski based his statements upon personal knowledge gained from his position with AHMSI and his review of AHMSI's records, we conclude this is sufficient to meet the knowledge requirements of rule 166a(f). *See Valenzuela*, 317 S.W.3d at 553; *Cooper*, 254 S.W.3d at 698; *Stucki v. Noble*, 963 S.W.2d 776, 780 (Tex. App.—San Antonio 1998, pet. denied) (personal knowledge requirement satisfied if affidavit sufficiently describes relationship between affiant and case so that it may be reasonably assumed that affiant has personal knowledge of facts stated in affidavit).

8

The Trimms' argument that the affidavit was conclusory is likewise without merit. Affidavits containing conclusory statements that fail to provide the underlying facts to support the conclusions are not proper summary judgment evidence. *Dolcefino v. Randolf*, 19 S.W.3d 906, 930 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). A statement is conclusory if it expresses a subjective belief and gives no factual support for that belief. *Ryland Group, Inc.*, 924 S.W.2d at 122; *Hawthorne v. Star Enter., Inc.*, 45 S.W.3d 757, 759 (Tex. App.—Texarkana 2001, pet. denied).

We conclude that Kaminski's statements in paragraphs twelve and thirteen concerning (1) AHMSI's acquisition of Option One's assets constituting the residential mortgage servicing business of Option One, (2) AHMSI becoming the servicer of the loan, (3) AHMSI's execution of the assignment of deed of trust/transfer of lien to U.S. Bank, and (4) U.S. Bank being the owner and holder of the loan are not conclusory. *See Cannon v. Tex. Indep. Bank*, 1 S.W.3d 218, 225 (Tex. App—Texarkana 1999, pet. denied) (finding affiant's statements "concerning execution and delivery of the note, a copy of which was attached to and incorporated in the affidavit, and concerning [bank] being the holder and owner of the documents, are statements of fact and not mere expressions of opinion").

The Trimms also objected to paragraphs twelve and thirteen because Kaminski was an interested witness. That an affiant is an interested witness is not a basis for excluding the affiant's statements from evidence. To support

9

summary judgment, however, an interested witness's affidavit must be "clear, positive, and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted." Tex. R. Civ. P. 166a(c); *see Trico Tech. Corp. v. Montiel*, 949 S.W.2d 308, 310 (Tex. 1997). The phrase "could have been readily controverted" does not mean that the summary judgment evidence could have been easily and conveniently rebutted; it means that the testimony was of a nature that could have been effectively countered by opposing evidence. *Trico Tech.*, 949 S.W.2d at 310 (citing *Casso v. Brand*, 776 S.W.2d 551, 558 (Tex. 1989)). Kaminski's statements in paragraphs twelve and thirteen are free from contradiction and could have been readily controverted if, in discovery, the Trimms had inquired about AHMSI's acquisition of Option One's assets and the transfer of the loan from AHMSI to U.S. Bank.

But Kaminski's statements in paragraph thirteen regarding the transfer of the loan to U.S. Bank from AHMSI, purportedly as successor-in-interest to Option One, so as to support the copy of the "Assignment of Deed of Trust/Transfer of Lien"[4] attached to Kaminski's affidavit as exhibit 1E, are inconsistent with his

---

[4]The Trimms objected to the "Assignment of Deed of Trust/Transfer of Lien" because it was signed by Linda Green, "a known and notorious robo-signer." The Trimms argued that Green was not a vice president of AHMSI and that it was doubtful that Green actually signed the assignment or that a notary was present when the document was signed. The Trimms offered no evidence supporting these factual allegations, and therefore, we reject these arguments. *See Chance v. CitiMortgage, Inc.*, 395 S.W.3d 311, 315–16 (Tex. App.—Dallas 2013, no pet.) (rejecting argument that indorsement was suspect because it is a

10

statements in paragraph twelve that Option One only assigned the assets constituting the residential mortgage servicing business, including the servicing rights related to the loan, to AHMSI. An assignment of the residential mortgage servicing business, however, would not necessarily include assignment of the loan. Because Kaminski's affidavit is internally inconsistent and there is no documentation corroborating Kaminski's assertion that AHMSI is the successor-in-interest to Option One entitled to transfer the loan to U.S. Bank, standing alone, the affidavit fails to establish the chain of title to U.S. Bank as a matter of law. *See First Gibraltar Bank, FSB v. Farley*, 895 S.W.2d 425, 428—29 (Tex. App.—San Antonio 1995, writ denied) (stating that "an issue of material fact is present on the issue of ownership of a note when there is an unexplained gap in the chain of title"). Nevertheless, because Kaminski's affidavit establishes that the note is a "bearer" instrument in U.S. Bank's possession and that U.S. Bank is the holder of the note and the deed of trust, his affidavit and its exhibits are sufficient to establish U.S. Bank's standing to foreclose as a matter of law. *See* Tex. Bus. & Com. Code Ann. § 3.205(b) (West 2002) (stating that when indorsed in blank, "an instrument becomes payable to bearer and may be negotiated by transfer of possession alone"); *Campbell v. Mortg. Elec. Registration Sys. Inc.*, No. 03-11-00429-CV, 2012 WL 1839357, at *4 (Tex. App.—Austin May 18, 2012,

---

"robotic mark" and not indicative of the signatory's name, as "mere speculation or conjecture regarding the authenticity of the signature [that] cannot defeat competent summary judgment evidence").

11

pet. denied) (mem. op.) ("[W]hen a mortgage note is transferred, the mortgage or deed of trust is also automatically transferred to the note holder by virtue of the common-law rule that 'the mortgage follows the note.'" (quoting *J.W.D., Inc. v. Fed. Ins. Co.*, 806 S.W.2d 327, 329–30 (Tex. App.—Austin 1991, no writ))).

The Trimms also argued that the best evidence of the transfer of assets from Option One to AHMSI as described in paragraph twelve of Kaminiski's affidavit would be the documents transferring those assets, not Kaminski's testimony regarding the transfer. The best evidence rule states, "To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required except as otherwise provided in these rules or by law." Tex. R. Evid. 1002. The rule does not apply unless a party is seeking to prove the contents of a document. *DeSoto Wildwood Dev., Inc. v. City of Lewisville*, 184 S.W.3d 814, 828 (Tex. App.—Fort Worth 2006, no pet.). Because U.S. Bank is not attempting to prove the contents of a document, the best evidence rule does not apply. *See id.*

The Trimms objected to exhibit 1H to the Kaminski Affidavit, which is a copy of the electronically stored copy of the letter Option One sent to the Trimms in October 2007 notifying them of the interest-rate increase, on the ground that the exhibit violated the best evidence rule. The Trimms argued that a copy of the original letter sent to the Trimms would be the best evidence of the notice of the interest-rate increase. *See* Tex. R. Evid. 1002, 1003 (addressing the admissibility of duplicates). An original is not required, and other evidence of the

12

writing is admissible if the original has been lost or destroyed, is not obtainable by judicial process or procedure, or is under the control of the party against whom it is offered. *See* Tex. R. Evid. 1004(a), (b), (d). U.S. Bank claimed it no longer had the original notice letter because the original was sent to the Trimms. The Trimms claimed they never received written notice of the rate increase. In light of the inferences that could be drawn from the conflicting testimony regarding whether the notice letter was sent, the trial court did not abuse its discretion by determining that that exhibit 1H was admissible under rule of evidence 1004.

We conclude that the trial court did not abuse its discretion by overruling each of the Trimms' objections and, therefore, did not err by denying the Trimms' motion to strike U.S. Bank's summary judgment evidence.

## B. U.S. Bank's objections to the Trimms' supplemental summary judgment evidence

After filing their summary judgment response, the Trimms filed supplemental summary judgment evidence that they claimed called into question the authenticity and genuineness of the affidavits, assignments, and other summary judgment evidence submitted by U.S. Bank. Among other grounds, U.S. Bank objected to the Trimms' supplemental summary judgment evidence because the Trimms did not timely file their supplemental summary judgment evidence in accordance with the parties' rule 11 agreement.

13

According to U.S. Bank, the hearing on its motion for summary judgment was originally scheduled for February 24, 2012. The Trimms requested that the hearing be rescheduled, and the parties entered into a rule 11 agreement in which they agreed to reset the hearing for March 2, 2012, but they agreed that the Trimms' deadline to file and serve a response to U.S. Bank's motion for summary judgment, including any supporting evidence, would remain February 17, 2012. *See* Tex. R. Civ. P 166a(c), (d). The Trimms filed their supplemental evidence on February 27, 2012. Because the Trimms filed their supplemental evidence after the deadline set forth in the rule 11 agreement, we conclude the trial court did not abuse its discretion by sustaining U.S. Bank's objection to the Trimms' supplemental summary judgment evidence. *See Fraud-Tech, Inc. v. Choicepoint, Inc.*, 102 S.W.3d 366, 377 (Tex. App.—Fort Worth 2003, pet. denied) ("[P]arties may alter the deadline for filing a [summary judgment] response by Rule 11 agreement.").

## II. U.S. Bank's Waiver, Release, and Estoppel Affirmative Defenses

U.S. Bank moved for summary judgment on its waiver, release, and estoppel affirmative defenses, arguing that the Trimms voluntarily released all of their claims against Option One and its successors under paragraph fourteen of the Forbearance Agreement. U.S. Bank urges us to affirm the summary judgment on procedural grounds because the Trimms have not asserted a general issue complaining that the trial court erred by granting U.S Bank's motion for summary judgment nor have they asserted as one of their six specific issues

14

that the trial court erred in granting summary judgment on U.S. Bank's affirmative defenses of release, waiver, and estoppel. *See Malooly Bros., Inc. v. Napier*, 461 S.W.2d 119, 121 (Tex. 1970) (stating that summary judgment "must stand," because "it may have been based on a ground not specifically challenged by the plaintiff" and because "there was no general assignment that the trial court erred in granting summary judgment" (supporting citations omitted)).

U.S. Bank is correct that in the "Issues Presented" section of their brief, the Trimms specifically assert six issues, none of which challenge the propriety of the summary judgment against them based upon U.S. Bank's affirmative defenses. Before enumerating these issues, however, the Trimms assert generally in an introductory question, "Were there genuine matters of fact at issue requiring an inquiry for the finder of fact?" In light of our responsibility to construe briefs liberally, we construe this statement as a general assignment of error by the Trimms, which permits them to argue all the reasons the trial court erred by granting summary judgment in favor of U.S. Bank. *See* Tex. R. App. P. 38.9; *Malooly Bros., Inc.*, 461 S.W.2d at 121.

Moreover, even though the Trimms do not set out a separate issue worded as challenging the summary judgment based on these affirmative defenses, the Trimms argue in the substance of their brief that U.S. Bank failed to prove that it had the right to enforce the Forbearance Agreement and, alternatively, that the release provisions of the Forbearance Agreement are unconscionable. We construe these arguments as a challenge to the summary judgment on U.S.

15

Bank's waiver, release, and estoppel affirmative defenses. *See Weeks Marine, Inc. v. Garza*, 371 S.W.3d 157, 162 (Tex. 2012) (holding that an appellant may preserve error in the "body" of his brief even if it is not separately listed as an issue); *Perry v. Cohen*, 272 S.W.3d 585, 587 (Tex. 2008) ("Appellate briefs are to be construed reasonably, yet liberally, so that the right to appellate review is not lost by waiver.").

Paragraph fourteen of the Forbearance Agreement provides as follows:

By their execution and delivery to Lender of this Agreement, the Borrowers acknowledge that the Arrearage is the Borrowers' full responsibility and was produced solely by the actions or inactions of the Borrowers. Furthermore, Borrowers agree that they have no defense, setoff or counterclaim related to the loan or the Property, or to the Lender's activities relating to the loan or the Property, and Borrowers hereby voluntarily release, discharge and agree not to sue Lender for any and all claims, demands, controversies, damages, actions, causes of action, liabilities, rights, costs (including attorney fees and court and litigation costs and expenses), indemnities, obligations or losses of any kind or nature whatsoever, whether at this time known or unknown, for or by reason of any act, omission, event, transaction, matter or cause, arising from or relating to the loan, the origination of the loan or the servicing of the loan, or any dispute arising from or relating to the loan, the origination of the loan or the servicing of the loan, or any of the facts upon which any such dispute it based.

U.S. Bank asserts it offered uncontested, competent summary judgment evidence establishing that Option One transferred the right to enforce the Forbearance Agreement to U.S. Bank.[5] Thus, U.S. Bank argues, it is entitled to enforce paragraph fourteen of the Forbearance Agreement for its benefit.

---

[5]U.S. Bank argues that the Trimms judicially admitted in their first amended petition that the Forbearance Agreement is a valid, enforceable agreement

16

Viewing the evidence in the light most favorable to the Trimms and indulging every reasonable inference and resolving any doubts in their favor, we conclude that U.S. Bank did not establish as a matter of law that Option One transferred its rights under the Forbearance Agreement to U.S. Bank. Even though Kaminski's affidavit states that AHMSI acquired "all of the assets constituting the residential mortgage servicing business, including without limitation the servicing rights related to the Loan" and that AHMSI, as successor-in-interest to Option One, transferred the loan to U.S. Bank, U.S. Bank's summary judgment evidence does not establish as a matter of law that U.S Bank acquired Option One's rights under the Forbearance Agreement or that Option One assigned its rights under the Forbearance Agreement to U.S. Bank.

The Forbearance Agreement is between the Trimms and Option One. The term "Lender" in the Forbearance Agreement is defined to include only Option One and does not include Option One's successors-in-interest. Thus, under the Forbearance Agreement's express terms, even if U.S. Bank were Option One's successor-in-interest, contrary to U.S. Bank's motion for summary judgment, the

---

between the Trimms and U.S. Bank, subject only to U.S. Bank proving that it was Option One's successor. The Trimms pled as follows: "The Texas Home Equity Security Instrument and Forbearance Agreements are valid and binding agreements between Plaintiffs and Defendant, *if Defendant is indeed the true owner of and holder of said agreements and the Deed of Trust*." [Emphasis added.] Because this statement is not unequivocal, it is not a judicial admission. *See Warnke v. Nabors Drilling USA, L.P.*, 358 S.W.3d 338, 344 (Tex. App.— Houston [1st Dist.] 2011, no pet.) ("An admission in a pleading must be deliberate, clear, and unequivocal to constitute a judicial admission.").

Trimms only released Option One, not its successors. If the trial court granted summary judgment on U.S. Bank's waiver, release, and estoppel affirmative defenses, the trial court erred in doing so because U.S. Bank failed to conclusively establish as a matter of law that it was entitled to summary judgment on these defenses. Accordingly, we sustain the Trimms' challenge to the summary judgment on these affirmative defenses.[6]

## III. Breach of Contract

In their second, third, and fourth issues, the Trimms assert there are genuine issues of material fact precluding summary judgment against them on their claim that U.S. Bank and its predecessors breached the deed of trust and the Forbearance Agreement. In their amended petition, the Trimms alleged U.S. Bank breached the deed of trust and the Forbearance Agreement by not giving proper notices to the Trimms; by demanding payment of charges, fees, and other monies the Trimms claim they did not owe; and by proceeding with foreclosure proceedings.

The essential elements of a breach of contract claim are (1) a valid contract exists between the plaintiff and the defendant; (2) the plaintiff performed or tendered performance or was excused from doing so; (3) the defendant

---

[6]Because we determine that U.S. Bank failed to establish as a matter of law that it was entitled to summary judgment on its waiver, release, and estoppel affirmative defenses, we do not address the Trimms' argument that the release provisions in the Forbearance Agreement are unconscionable. *See* Tex. R. App. P. 47.1.

18

breached the contract; and (4) the plaintiff incurred damages as a result of the defendant's breach. *West v. Triple B Servs., LLP*, 264 S.W.3d 440, 446 (Tex. App.—Houston [14th Dist.] 2008, no pet.). In its motion for summary judgment, U.S. Bank attempted to negate the second, third, and fourth elements of the Trimms' claim.

## A. Breach of the Deed of Trust and the Forbearance Agreement

In its motion, U.S. Bank argued that neither it nor its predecessors breached the deed of trust or the Forbearance Agreement. It further argued that the Trimms could not maintain their breach of contract claim because they defaulted on their obligations under the deed of trust and the Forbearance Agreement by failing to pay the additional sums due as a result of the note's interest rate increasing during the term of Forbearance Agreement and defaulted on their obligations under the deed of trust and the note by failing to make any payments on the loan since January 2008.

The Trimms did not dispute that they have failed and refused to pay any additional sums allegedly due as a result of the interest-rate increase and have not made any payments on the note since making their final plan payment. Instead, they contended that Option One breached the deed of trust and Forbearance Agreement first by failing to provide, prior to the final plan payment due date, written notice that they were not current on their plan payments and that the interest rate on the note would be increased.

19

On appeal, U.S. Bank admits it has never contended that the Trimms were not current on their plan payments and do not contest the Trimms' affidavit testimony that they timely made each plan payment required by the Forbearance Agreement. U.S. Bank contends, however, that Option One was not required to give the Trimms notice of the interest-rate increase under the terms of the deed of trust or the Forbearance Agreement.

According to U.S. Bank, when the interest rate on the note increased during the term of the Forbearance Agreement, Option One chose not to increase the amount of the plan payment pursuant to the following provision in paragraph seven of the Forbearance Agreement:

> If the Note is an adjustable rate instrument, the Plan Payment may be subject to increase pursuant to interest rate adjustments as dictated by the terms of the Note. If the Plan Payment is not increased despite an interest rate increase pursuant to the Note, the sums accrued but unpaid due to the interest rate increase ("Additional Sums Due Per Rate Change") must also be paid to satisfy the terms and conditions of this Agreement and bring the loan current. . . . In order to ensure payment by Borrowers of such Additional Sums Due Per Rate Change and in Lender's sole and absolute discretion, the Plan Payment amount may be subject to increase, upon written notice by Lender to Borrowers, to an amount necessary to bring the loan current by the final Plan Payment due date under this Agreement.

Relying on this provision, Option One chose to demand the additional sums accrued but unpaid as a result of the interest-rate increase after the final plan payment was made in January 2008. We agree that neither this provision nor any other provision in the Forbearance Agreement expressly required Option One to provide notice, written or otherwise, of the interest-rate increase. Under

20

paragraph seven, Option One was only required to give the Trimms written notice if it increased the plan payment amount, which it chose not to do.

However, the Forbearance Agreement provides that "[a]ll of [the Trimms'] rights and responsibilities under, and all of the terms and conditions of the note and [deed of trust] shall remain in full force and effect except as expressly modified by this Agreement." The deed of trust requires that Option One give the Trimms notice of the interest-rate increase: "The Note Holder will deliver or mail [the Trimms] a notice of any changes in [the] interest rate and the amount of [the] monthly payment before the effective date of any change."

According to Kaminski's affidavit and exhibit 1H thereto, on or about October 17, 2007, Option One notified the Trimms by mail that the interest rate would increase, effective December 1, 2007. James Trimm, however, testified in his affidavit that he never received written notice of the interest-rate increase. Thus, because a genuine issue of material fact remains as to whether Option One sent notice as required by the deed of trust, U.S. Bank failed to conclusively prove that it or Option One did not breach the deed of trust and the Forbearance Agreement or that the Trimms did breach the deed of trust and the Forbearance Agreement.[7] *See Sauceda v. GMAC Mortg. Corp.*, 268 S.W.3d 135, 139–40

---

[7]U.S. Bank never argued that even if failure to provide notice constituted a default under the deed of trust and the Forbearance Agreement, such a failure was not a material breach excusing the Trimms' nonperformance. U.S. Bank also never argued that the breach of the deed of trust and the Forbearance Agreement as alleged by the Trimms was by Option One and that Option One's breach should not be attributed to U.S. Bank.

21

(Tex. App.—Corpus Christi 2008, no pet.) (holding that in an action to set aside foreclosure and quiet title, affidavit of homeowner stating that notice of foreclosure was never received created a genuine issue of material fact).

## B. The Trimms' damages

U.S. Bank also argued in its summary judgment motion that even if U.S. Bank breached the deed of trust and the Forbearance Agreement, the Trimms were not damaged as a result. In support of this argument, U.S. Bank asserted that the Trimms have enjoyed a significant benefit from residing in their home without making any payments on the loan since January 2008. U.S. Bank further argued that the Trimms' expenses to defend against foreclosure and bring this lawsuit were a result of their breach of the deed of trust and their bad faith pursuit of an action they knew or should have known they released in the Forbearance Agreement.

In order to properly obtain summary judgment on this ground, U.S. Bank was required to conclusively negate the causation element of the Trimms' breach of contract claim. *See* Tex. R. Civ. P. 166a(c). The Trimms pled for actual, consequential, incidental, and mental anguish damages. James Trimm stated in his affidavit that the Trimms are seeking money damages for the damage done to their credit scores by U.S. Bank and for the emotional distress caused by U.S. Bank's attempts to foreclose on their home. The only summary judgment evidence U.S. Bank points to is Kaminski's affidavit testimony that the Trimms have not made any payments on the loan since they made the last plan payment

22

in January 2008. This is insufficient to conclusively prove that the Trimms were not damaged by U.S. Bank's alleged breach.[8]

Because U.S. Bank failed to conclusively negate at least one element of the Trimms' breach of contract claim, the trial court erred by granting summary judgment against the Trimms on this claim. Accordingly, we sustain the Trimms' second, third, and fourth issues.

## IV. Fair Debt Collection Practices Act

Although not raised as a separate issue, the Trimms assert that there is a genuine issue of material fact as to the amount they owed at the end of the Forbearance Agreement, and that by attempting to collect additional amounts on the loan accrued as a result of the increased interest rate—which the Trimms contend they do not owe—U.S. Bank violated the Fair Debt Collection Practices Act (FDCPA). In their amended petition, the Trimms alleged U.S. Bank violated the FDCPA by attempting to collect more than the amount of the debt, by attempting to wrongfully foreclose on the Trimms' home, and by trying to force the Trimms into loan modifications with incorrect amounts due. *See* 15 U.S.C.A. § 1692f (West 2009). U.S. Bank moved for summary judgment on the Trimms' FDCPA claim, asserting that because it never attempted to collect more than was due under the note and the deed of trust and it only sought to foreclose eighteen

---

[8]Because U.S. Bank moved for summary judgment on the grounds that the Trimms were not damaged as a result of U.S. Bank's alleged breach, we do not address whether the types of damages the Trimms seek are available. *See G.H. Towing Co. v. Magee*, 347 S.W.3d 293, 297 (Tex. 2011) (noting that a court cannot grant summary judgment on grounds not presented in the motion).

23

months after the end of the Forbearance Agreement because the Trimms did not make any payments during that period, U.S. Bank did not violate the FDCPA as alleged by the Trimms. U.S Bank argued that at the end of the Forbearance Agreement, it only attempted to collect the amounts due as a result of the interest-rate increase during the term of the Forbearance Agreement and that it only continued to seek amounts properly collectible under the loan, including principal, interest, and various fees and expenses.

U.S. Bank presented no evidence to establish the amounts it alleged were properly due under the note, the deed of trust, and the Forbearance Agreement or of the amounts it attempted to collect from the Trimms. And, as discussed above, it failed to establish that it gave the Trimms notice of the interest-rate increase as required by the deed of trust. Because U.S. Bank has not conclusively negated at least one element of the Trimms' FDCPA claim, the trial court erred by granting summary judgment on this claim. Accordingly, we sustain the Trimms' challenge to the trial court's summary judgment on their FDCPA claim.

## V. Fraud

In their fifth issue, the Trimms argue that the trial court erred by granting summary judgment on their statutory and common-law fraud claims. The Trimms allege that prior to entering into the loan in April 2005, Option One represented to the Trimms that if they maintained a good payment history, they could refinance the loan at a fixed interest rate after two years through an internal program

24

offered by Option One.  The Trimms claim they entered into the loan in reliance on this promise.  The Trimms further claim that when they attempted to refinance the loan in the spring of 2007, they had a good payment record, but contrary to its promise, Option One had changed its qualification standards and would not refinance the loan at a fixed rate.

In its motion for summary judgment, U.S. Bank argued that the statute of frauds, as codified in business and commerce code section 26.02, barred the Trimms' fraud claims.  *See* Tex. Bus. & Com. Code Ann. § 26.02(b)–(d) (West 2009).  Section 26.02(b) provides that "[a] loan agreement in which the amount involved in the loan agreement exceeds $50,000 in value is not enforceable unless the agreement is in writing and signed by the party to be bound or by that party's authorized representative."  Tex. Bus. & Com. Code Ann. § 26.02(b).  The term "loan agreement" includes any promise, agreement, undertaking, or commitment "pursuant to which a financial institution loans or delays repayment of or agrees to loan or delay repayment of money, goods, or another thing of value or to otherwise extend credit or make a financial accommodation."  Tex. Bus. & Com. Code Ann. § 26.02(a)(2) (West 2009).  The statute further provides that "the rights and obligations of the parties to an agreement subject to Subsection (b) of this section shall be determined solely from the written loan agreement, and any prior oral agreements between the parties are superseded by and merged into the loan agreement" and that "an agreement subject to Subsection (b) of this section may not be varied by any oral agreements or

25

discussions that occur before or contemporaneously with the execution of the agreement." *Id.* § 26.02(c), (d). Section 26.02(e) requires that each loan agreement that is subject to subsection (b) must notify the debtor or obligor about section 26.02(d)'s prohibition against oral modifications. *Id.* § 26.02(e) (West 2009). If the notice required by subsection (e) is not given on or before execution of the loan agreement or is not conspicuous, section 26.02 does not apply to the loan agreement. *Id.* § 26.02(d).

U.S. Bank argued that because the Trimms' fraud claims are based on an alleged oral promise made prior to the execution of the loan that Option One would allow the Trimms to refinance the loan at a fixed rate, it is subject to the statute of frauds and fails as a result. We disagree. Neither the note nor the deed of trust nor any other document in U.S. Bank's summary judgment evidence contains the notice required by section 26.02(e). Therefore, U.S. Bank cannot take advantage of section 26.02. *See id.* § 26.02(d); *see also Comiskey v. FH Partners, LLC,* 373 S.W.3d 620, 641 n.25 (Tex. App.—Houston [14th Dist.] 2012, pet. denied) (stating that in order to take advantage of business and commerce code section 26.02, the financial institution must give notice as required by section 26.02(e)).

If the trial court granted summary judgment on the Trimms' fraud claim based upon U.S. Bank's statute of frauds defense under section 26.02, the trial court erred in doing so because U.S. Bank failed to establish this defense as a matter of law. Accordingly, we sustain the Trimms' fifth issue.

26

## VI. Request for Declaratory Judgment

We construe the Trimms' first issue as a challenge to the summary judgment on their declaratory judgment claims. In their amended petition, the Trimms asked the trial court to determine U.S Bank's and the Trimms' rights and duties in connection with the note, the deed of trust, the and Forbearance Agreement, specifically (1) who was the current owner and holder of the note; (2) whether the owner and holder of the note approved any mortgage servicer to collect payments under the deed of trust and Forbearance Agreement; (3) whether the collection of payments was in violation of the agreements previous owners and holders of these instruments had with the Trimms; (4) who was the owner of the deed of trust and the Forbearance Agreement; (5) what amounts were owed by the Trimms to U.S. Bank; and (6) how the Trimms' payments were applied.

U.S Bank moved for summary judgment on the Trimms' request for a declaration as to who was the current owner and holder of the note, who was the current owner of the deed of trust, what amounts were owed by the Trimms to U.S. Bank, and how the Trimms' payments were applied. Because U.S. Bank did not move for summary judgment on the Trimms' request for declarations as to whether the owner and holder of the note approved any mortgage servicer to collect payments under the deed of trust and the Forbearance Agreement, whether the collection of payments was in violation of the agreements that previous owners and holders of these instruments had with the Trimms, and who

27

was the owner of the Forbearance Agreement, the trial court erred by granting summary judgment on these requests for declaratory relief. *See G.H. Towing Co.*, 347 S.W.3d at 297 ("Granting a summary judgment on a claim not addressed in the summary judgment motion . . . is, as a general rule, reversible error."); *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993) (holding that a motion for summary judgment "must stand or fall on the grounds expressly presented in the motion"); *see also Double Diamond, Inc. v. Van Tyne*, 109 S.W.3d 848, 852 (Tex. App.—Dallas 2003, no pet.) (where traditional summary judgment motion did not address claim for declaratory judgment, trial court erred in granting summary judgment on declaratory judgment cause of action).

U.S. Bank argued it was entitled to summary judgment because its summary judgment evidence proved that it was the owner and holder of the note and the deed of trust and, therefore, was entitled to enforce them. U.S. Bank further argued it was entitled to summary judgment because the specific amounts owed and how the payments were applied is irrelevant because it is indisputable that the loan was in default as the Trimms had not made any payments on the loan since January 2008. The purpose of a declaratory judgment action is to "declare [the] rights, status, and other legal relations whether or not further relief is or could be claimed." Tex. Civ. Prac. & Rem. Code Ann. § 37.003(a) (West 2008). By granting U.S. Bank's motion for summary judgment, the trial court effectively entered a take-nothing judgment against the Trimms on their request

28

for declaratory relief, thereby denying the Trimms a determination by declaratory judgment. But U.S. Bank did not move for summary judgment on the grounds that the Trimms were not entitled to declaratory relief. Therefore, the trial court erred by granting summary judgment on the Trimms' claims for declaratory relief. *See G&H Towing Co.*, 347 S.W.3d at 297 (noting that a court cannot grant summary judgment on grounds not presented in the motion). Accordingly, we sustain the Trimms' first issue.

## Conclusion

We overrule the Trimms' sixth issue. Having sustained all of the Trimms' remaining issues, we reverse the trial court's summary judgment and remand this case to the trial court for further proceedings. *See* Tex. R. App. P. 43.2(d).

/s/ Anne Gardner
ANNE GARDNER
JUSTICE

PANEL: GARDNER, WALKER, and MCCOY, JJ.

DELIVERED: July 17, 2014